## Franklin County v. City of St. Albans

[576 A.2d 135]

No. 89-224

Present: **Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.**

Opinion Filed May 11, 1990

*Richard A. Gadbois*, Enosburg Falls, for Plaintiff-Appellee.

*Farrar & Cuonos, P.C.*, St. Albans, for Defendant-Appellant.

**Allen, C.J.** The City of St. Albans appeals from a superior court order declaring that resumption of overnight housing of prisoners at the Franklin County jail would not constitute a prohibited change, expansion, enlargement or extension of a nonconforming use. We affirm.

The Franklin County jail was used to house overnight prisoners until September 4, 1981. Some remained there for as long as three months. Sheriff Roland Keenan announced that as of that date he was not accepting overnight prisoners or housing those over whom he had custody. His reasons were the age and condition of the facility and concern that he faced personal liability if he continued to allow use for overnight prisoners. The trial court found that after September 4, 1981 the jail has been used solely for daytime lockup, typically two to three times a week and for up to five or six persons at a time.

The present St. Albans zoning regulations were adopted in 1977 and place the facility in its high-density residential zone, which does not permit jails. Section 602 of the regulations relates to nonconforming uses; it states:

> Any non-conforming use of structures or land, except those specified below, may be continued indefinitely, but:
>
> . . . .
>
> [602.2] Shall not be changed to another non-conforming use without approval by the Zoning Board, and then only to a use which, in the opinion of the Zoning Board, is of the same or of a more restricted nature.
>
> [602.3] Shall not be re-established if such use has been discontinued for a period of one year, or has been changed to, or replaced by, a conforming use. Intent to resume a nonconforming use shall not confer the right to do so.

However, § 604 of the ordinance permits the expansion of any legal nonconforming use, on Board approval, "providing it does not adversely affect the surrounding areas and providing it meets the same criteria as for special conditional use."

The present Franklin County sheriff, Dale Messier, appeared before the St. Albans Zoning Board of Adjustment in January

and February, 1988 seeking the Board's approval of resumption of the jail's use as an overnight facility for prisoners.[1] The Zoning Board denied the permission, and the County filed the present action for declaratory relief, together with an appeal of the Board's denial, pursuant to 24 V.S.A. § 4472. The trial court concluded that "the resumption of overnight housing of prisoners, and an increase in the number of occupied cells, at the Franklin County jail, will not constitute a prohibited change, expansion, enlargement, or extension of the preexisting non-conforming use." The present appeal followed.

The City's appeal interweaves, and sometimes combines, two distinct themes. First, it argues that the County in effect abandoned or discontinued the use of the jail as a facility for the housing of prisoners (other than what it characterizes as casual, nonovernight confinements). That abandonment left the jail as a nonconforming structure, but with its permitted uses limited to those that occurred after September, 1981—County administrative functions and the casual housing of a few daytime prisoners. The City then goes on to measure the scope of the County's proposed expansion against this post-1981 norm and to compare that level of proposed use to the uses in other cases where significant new activities were barred as impermissible for nonconforming structures.

In sum, the City first argues that the pre-1981 jail uses have been abandoned, leaving the jail as a nonconforming use with very limited functions, and then contends that, measured from its lowered threshold, the proposed use of the jail for housing prisoners in the pre-1981 manner would be an impermissible expansion of a nonconforming use.

---

[1] Plaintiff appears to have had a twofold basis for its superior court action, seeking both declaratory relief on the question of whether the proposed use of the jail for overnight prisoners was a prohibited expansion of a nonconforming use and an appeal from the Board decision. The Board, in turn, appears from the trial court decision and from the record before us to have decided two questions: first, that the proposed use of the jail for overnight prisoners was an expansion of a nonconforming use barred under the City zoning ordinance, and second, that the County did not merit a special exception under § 604 of the ordinance. The judgment order of the trial court granted the declaratory relief sought by plaintiff and did not reach the § 604 issue. No cross-appeal was filed, and consequently, no § 604 issue is raised on appeal.

We must first address the question of whether the County ever abandoned or discontinued the full range of nonconforming uses preserved for the jail prior to September 4, 1981, or whether, in the words of the trial court, there was, after that date, "very substantial attenuation, but not cessation," and hence no abandonment. Defendant contends that the essential nature of the jail facility was changed when it ceased to be a "correctional public facility." The County does not differ with the City that since September 4, 1981 no prisoners have been housed in the Franklin County jail by the Vermont Commissioner of Corrections. But the City's stress on the formal commitment of prisoners to the facility, as opposed to casual, but continuous use after 1981, is not sufficient to demonstrate abandonment. The trial court's findings that the jail has been used in the post-1981 period for daytime lockup, typically two to three times a week and for up to five or six persons at a time, is supported by the testimony of a deputy sheriff who was on hand in the intervening years. The record does not reflect the abandonment of jail functions claimed by the City and exemplified in the cases it relies on. In *Wyatt v. Board of Adjustment-Zoning*, 622 P.2d 85 (Colo. App. 1980), a beauty shop ceased operations for twelve months, and the right to resume the nonconforming use was lost. There was no evidence, however, that the shop maintained any level of operations in the twelve months after shutdown. *Id.* at 86. Nor was it in doubt that the gas station and used car lot in *Miorelli v. Zoning Hearing Board*, 30 Pa. Commw. 330, 333–37, 373 A.2d 1158, 1160–61 (1977), had been abandoned when it was used as a machine shop for seven years.

In the present case, the use of the jail changed significantly in 1981, but the jail did not disappear. A reduction in the level of activities does not imply abandonment. *Union Quarries, Inc. v. Board of County Comm'r*, 206 Kan. 268, 274–76, 478 P.2d 181, 187 (1970) (no abandonment by operators of quarry, who left large stockpile of rock and equipment, paid royalties, sold small quantities of rock, and quoted prices for crushed rock); *McLay v. Maryland Assemblies, Inc.*, 269 Md. 465, 470, 306 A.2d 524, 527 (1973) (ammunition manufacturer which kept equipment in place and kept office open, despite lack of orders, did not abandon nonconforming use); *City of Binghamton v. Gartell*, 275 A.D. 457, 462, 90 N.Y.S.2d 556, 560–61 (1949) (occa-

sional purchase of junk in the conduct of business shows lack of substantial evidence to establish abandonment); *Donham v. E.L.B., Inc.*, 8 Ohio Misc. 2d 31, 33, 457 N.E.2d 953, 956 (1983) (junkyard owner continued at least some prior uses, including storage and some buying and selling of junk, and did not abandon nonconforming use); *In re Haller Baking Co.*, 295 Pa. 257, 263, 145 A. 77, 79–80 (1928) (use of stable diminished materially, but the stable was still used for its original purpose and was not abandoned).

The trial court concluded that no cessation had occurred, and that conclusion is not "clearly unreasonable, irrational, arbitrary or discriminatory." *DeWitt v. Town of Brattleboro Zoning Bd. of Adjustment*, 128 Vt. 313, 319, 262 A.2d 472, 476 (1970); see also *Turcuit v. City of Galveston*, 658 S.W.2d 832, 835 (Tex. Ct. App. 1983). If the nonconforming use was not abandoned, as the trial court concluded, then resumption of activity at the jail to pre-1981 levels, so long as it was within the range of the previous activity and not greater than the maximum activity within that pre-1981 range, was not an expansion as a matter of law. *Union Quarries, Inc.*, 206 Kan. at 276–77, 478 P.2d at 187–88; *James H. Maloy, Inc. v. Guilderland Town Board*, 92 A.D.2d 1056, 1057, 461 N.Y.S.2d 529, 531 (1983).

The trial court went on to conclude that even if the nonconforming use level of activity were to be frozen at the post-1981 level, the resumption of the facility's use for overnight prisoners was merely an increase in volume and intensity, not a proscribed change.[2] See *Black v. Town of Montclair*, 34 N.J. 105, 117–18, 167 A.2d 388, 395 (1961); *Ruhm v. C. P. Craska, Inc.*, 59 A.D.2d 1016, 1017, 399 N.Y.S.2d 749, 750 (1977); 1 R. Anderson, American Law of Zoning 565, 597 (3d ed. 1986). That conclusion was similarly without error.

*Affirmed.*

---

[2] Since there were no findings that the resumption of overnight use of the facility would *exceed* pre-1981 levels, and the record reflects no evidence to that effect, the trial court's additional findings were consistent with, but not necessary to, the result the court reached.