STATE OF VERMONT

ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
| | } | |
| Town of St. Albans, | } | |
|     Plaintiff, | } | |
| | } | |
|     v. | } | Docket No. 106-7-99 Vtec |
| | } | |
| Richard Deso and Suzanne Deso, | } | |
|     Defendants. | } | |
| | } | |
| | } | |
| | } | |
| In re: Appeals of | } | Docket Nos. 112-7-99 Vtec, 113-7-99 Vtec, |
|  Richard Deso and Suzanne Deso | } |     and 114-7-99 Vtec |
| | } | |
| | } | |

Decision and Order

These four consolidated cases all involve a mobile home display and sales facility operated on property owned by Defendant-Appellants Richard and Suzanne Deso on the east side of Sheldon Road (Vermont Route 105) in the Town of St. Albans. The business, D & H Housing, is a Vermont company of which Mr. Deso is a principal. In Docket No. 106-7-99 Vtec, the Town took enforcement action against Defendant-Appellants, asserting that they are operating a motor vehicle and equipment sales and service business on their property without a permit, and that they have installed a sign for the business without a sign permit. In Docket No. 112-7-99 Vtec, Defendant-Appellants appealed from a decision of the Zoning Board of Adjustment (ZBA) of the Town of St. Albans, denying conditional use approval. In Docket No. 113-7-99 Vtec, Defendant-Appellants appealed from the ZBA's decision upholding the Notice of Violation which formed the basis of that enforcement action. In Docket No. 114-7-99 Vtec, Defendant-Appellants appealed from a decision of the ZBA denying their request for a stay of enforcement.

Defendant-Appellants are represented by George D. Harwood, Esq.; the Town is represented by David A. Barra, Esq.; a neighbor, Maurice Remillard, entered his appearance and represents himself. An evidentiary hearing was held in this matter before

1

Merideth Wright, Environmental Judge.  The parties were given the opportunity to submit written requests for findings and memoranda of law.  Upon consideration of the evidence and the written memoranda and proposed findings, the Court finds and concludes as follows.

The late Mr. Fay Bushey, a former resident of St. Albans, operated an automobile and mobile home dealership elsewhere on Sheldon Road beginning in 1966.  In May of 1968 he moved his operations to and built a commercial garage on the Gallagher lot, adjacent to what is now the Deso lot.  He did automotive service work and operated his construction business on the Gallagher lot, and held an automobile dealer license, under which he was required to sell at least six[1] vehicles per year to maintain the license.  He spent a few weeks in Florida in the winters even as early as 1968, and over the years gradually increased the length of time he spent during the winter in Florida, until he was spending only summers[2] in Vermont by the early 1990s.

---

[1]  That requirement changed to twelve vehicles per year in 1989.  23 V.S.A. §473 and see 23 V.S.A. §4(8)(F).

[2]  The licensure requirements also require that a dealer be open for business at least 104 days in the calendar year, 23 V.S.A. §4(8)(A)(v); no evidence was presented whether Mr. Fay Bushey continued to meet this requirement in the 1990s.

Zoning was adopted in the Town of St. Albans in December of 1968. The Deso lot is located in the Rural[3] zoning district of the Town, in which operating a mobile home display and sales business[4] is neither a permitted nor a conditional use. Zoning Bylaws, §315(4). The Zoning Bylaws provide that uses not listed as permitted or conditional in a specific district are prohibited in that district. §313(A).

In 1984, Mr. Fay Bushey purchased what is now the Deso lot from LaBelle. At that time, including the preceding eighteen months, the LaBelle lot was not being used for mobile home display and sales, nor for motor vehicle and equipment sales and service as that term is defined in the Zoning Bylaws. We will refer to the former LaBelle lot, now the Deso lot, as "the Deso lot" for clarity in this decision. After 1984, Mr. Fay Bushey used both the former Gallagher lot and the Deso lot for his motor vehicle sales and service business, and exhibited vehicles for sale along Sheldon Road. In or soon after 1984, the Deso lot contained a concrete pad suitable for the placement of a residential mobile home and contained a garage-type storage building capable of holding approximately two or three passenger vehicles.

Because Mr. Fay Bushey did not own the Deso lot when the Zoning Bylaws went into effect, and because no evidence was presented that the Deso lot was being used for mobile home display and sales or for motor vehicle and equipment sales and service when the Zoning Bylaws went into effect, or during the eighteen months preceding Mr. Fay

---

[3] Appellants' trial memorandum suggested that the zoning district applicable to this property changed in 1985, but no evidence was presented from which the Court can find that it was in other than the Rural zoning district, and Appellants' request for findings filed after the hearing does not request a finding that the zoning district changed.

[4] The parties have assumed that the display and sales of mobile or modular homes falls within the use category: "Motor Vehicle and Equipment Sales and Service," defined in Part V of the Zoning Bylaws as: "an establishment providing sales and major servicing of automobiles, trucks, farm and construction equipment, and other motorized vehicles, including dealerships, body shops, vehicle and equipment repair shops, mobile home and camping vehicle sales & service establishments and the like." While the definition appears to cover only motorized vehicles, and not to cover modular homes without an engine, which are meant to be trucked to a permanent site and installed on a pad or foundation, this discrepancy does not affect the outcome of these consolidated cases.

Bushey's purchase of it, the Deso lot did not acquire pre-existing, non-conforming status under §313(B). The Gallagher lot may have acquired that status, but the Gallagher lot is not at issue in this case. Mr. Fay Bushey's use of both lots does not somehow give the Deso lot the status of the Gallagher lot.

Approximately five years after Mr. Fay Bushey had purchased the Deso lot, that is, in approximately 1980, he conveyed the former Gallagher lot to his son, and retained the Deso lot. Mr. Fay Bushey moved to the Deso lot and lived in a mobile home on the concrete pad on the Deso lot, which he occupied as an essentially year-round residence[5] until the late 1980s. From the Deso lot he ran a small construction business and parked a backhoe, a bulldozer and a dump truck on the property. He did not sell construction equipment except incidental to replacing his own equipment with a new model. He sold cars, boats, farm equipment, recreational vehicles and travel trailers from the Deso lot, but he did not display, sell or offer mobile homes for sale on or from the lot. When Mr. Fay Bushey was selling from the Deso lot, at most two vehicles were displayed for sale on the Deso lot at any one time, except for an incident in approximately 1987 during which, by arrangement with a local automobile dealer, Mr. Fay Bushey put ten or eleven cars out for sale, with banners and flags. They were removed the following day after a neighbor protested. No evidence was present of any notices of violation or other enforcement action taken against Mr. Fay Bushey for any activities on the Deso lot.

As of some time in the late 1980s after 1987, Mr. Fay Bushey partially retired to Florida. He removed the mobile home as a residence and returned to the Deso lot annually in the summers only, with a travel trailer which he set up on the pad and lived in. He continued to sell automobiles, farm equipment, recreational vehicles, boats and yard sale items from the Deso lot, at a decreasing level, while living on the lot during the summers. This seasonal use by Mr. Fay Bushey or a caretaker continued through the summer of 1995. During the last few years before the summer of 1995, only an occasional car, piece of farm equipment or boat was displayed for sale on the property. Mr. Fay

---

[5] As he lived on the property, some or all of his activities may have qualified as a home occupation, but that designation is not material to the present case.

Bushey did not sell anything from the Deso lot after early fall of 1995, when he returned to Florida, and he allowed his Vermont automobile dealer's license to lapse at its next renewal date in February of 1996. No evidence was presented as to the dates of any automobile sales by Mr. Fay Bushey at any time, including the summer of 1995.

The summer of 1995, after Defendant-Appellants purchased the property, was the last summer during which Mr. Fay Bushey lived in a travel trailer on the property and sold occasional vehicles from the property. Mr. Fay Bushey's construction equipment was parked on the property through the summer of 1997. At some time between the fall of 1995, when Mr. Fay Bushey went back to Florida, and June of 1998, when Defendant-Appellants began to store things such as trailer hitches used in the business on the premises, Defendant-Appellants allowed a Mr. John Clapper to park his travel trailer or mobile home on the pad and use it as a residence. Mr. Clapper was 65 years old at the time, acted as a caretaker for the property, and repaired lawnmowers on the premises in the summer months. He may have repaired and sold an automobile from the premises, but no evidence was presented of any automobile sales by Mr. Clapper. He did not display or sell mobile homes. At most, he was operating a lawnmower repair home occupation on the Deso lot.

Defendant-Appellants purchased their property from Mr. Fay Bushey on July 20, 1995, and commenced the sale of mobile homes on the premises in November or December of 1998. In November of 1998, Mr. Deso applied for and received a permit to erect a single double-wide mobile home on the premises; the application discloses no request to use the mobile home for for other than as a single family residence. Defendant-Appellants made no application for a permit for a commercial use or for a sign. They placed the second mobile home on the property in approximately early March of 1999 . They maintain two mobile homes on the property, one of which is hooked up and used as an office and model, the other is not hooked up and is used only as a model. They plan to put at most one additional mobile home on the property, also as a model. Customers come to the property, look at the models, and order their homes shipped directly from the manufacturer, except that annually the mobile homes located on the property are sold and removed, and replaced with newer models.

The Zoning Administrator issued a Notice of Violation to Mr. Deso on March 4, 1999,

5

citing him for carrying on a commercial business without a permit, directing him to cease operation and take corrective action within seven days (by March 11, 1999). It is this Notice of Violation which is the subject of Docket No. 113-7-99 Vtec.

Before Defendant-Appellants erected a sign for the mobile home business, no sign advertising a business had been located on the Deso lot. Therefore, the sign is not a pre-existing non-conforming use, and cannot be displayed without a sign permit under the Zoning Bylaws. Defendant-Appellants installed their sign in approximately early April of 1999. The Zoning Administrator issued a Notice of Violation to Mr. Deso on April 6, 1999, citing him for constructing a sign on his property without a permit, directing him to remove the sign and take corrective action within seven days (by April 13, 1999). He did not appeal that Notice of Violation, and therefore cannot contest the violation, nor did he remove the sign.

Because, as discussed above, the Deso lot did not acquire pre-existing non-conforming use protection under §313(B), Defendant-Appellants may not sell or offer for sale mobile homes on their lot without first obtaining a permit to do so. Further, as the motor vehicle sales or mobile home display and sales from the Deso lot were not pre-existing, Defendant-Appellants do not qualify to apply for an expansion of that use under §313(B) and conditional use review.

We note specifically that this decision does not depend on the level of use on the Deso lot in the last eighteen months of Mr. Fay Bushey's ownership, or in the period between the fall of 1995 and November of 1998 when Defendant-Appellants sold their first mobile home from the property. However, it may assist the parties to note that even if Mr. Fay Bushey had received pre-existing, non-conforming use protection for a commercial auto sales and service use when he purchased the property in 1984, as of approximately 1990 Mr. Fay Bushey had abandoned the commercial non-conforming use and was engaging at most in a non-conforming, non-commercial level of sales of yard sale items, boats, and vehicles as a seasonal home occupation. It is this change in the character of the use from commercial use to 'home occupation' use which would distinguish this case from the mere reduction in level of activity allowed in Franklin County v. City of St. Albans, 154 Vt. 327 (1990). The Desos could not acquire rights to a level of non-conforming use of

6

the property which exceeded the rights held by Mr. Fay Bushey when he sold[6] the property to them. Further, they would have lost any non-conforming use protection due to the lapse of more than eighteen months between Mr. Fay Bushey's last possible sales of automobiles in the fall of 1995, and Defendant-Appellants' first display of mobile homes for sale in November of 1998. §313(B)(3).

Before Defendant-Appellants erected a sign for the mobile home business, no sign advertising a business had been located on the Deso lot. Therefore, the sign is not a pre-existing non-conforming use, and cannot be displayed without a sign permit under the Zoning Bylaws. Defendant-Appellants installed their sign in approximately early April of 1999. The Zoning Administrator issued a Notice of Violation to Mr. Deso on April 6, 1999, citing him for constructing a sign on his property without a permit, directing him to remove the sign and take corrective action within seven days (by April 13, 1999). He did not appeal that Notice of Violation, and therefore cannot contest the violation, nor did he remove the sign. Accordingly, the portion of Docket No. 106-7-99 relating to the sign violation is resolved in favor of the Town.

Accordingly, based on the findings and conclusions discussed above, it is hereby ORDERED and ADJUDGED that:

1. Judgment is entered for the Town in Docket No. 106-7-99 Vtec, the enforcement action, and in Docket No. 113-7-99 Vtec, the underlying notice of violation for the commercial use violation. Defendant-Appellants have violated the Zoning Bylaws since March 11, 1999 by placing more than the single permitted mobile home on their property and by displaying, offering for sale and selling mobile homes from their property in the Rural zoning district, in which district a motor vehicle and equipment sales and service business is neither a permitted nor a conditional use. Further, they have violated the Zoning Bylaws since April 13, 1999 by installing a sign for the business without a sign

---

[6]Any cause of action which Defendant-Appellants may believe they have for misrepresentation in the purchase of their property is beyond the jurisdiction of the Environmental Court; any such cause of action must be brought in Superior Court.

permit. This decision and order is an entry of final judgment as to Docket No. 113-7-99 Vtec. V.R.C.P. 54(b).

It is hereby Ordered and Adjudged that Defendant-Appellants shall remove the sign immediately, and shall remove any mobile home beyond the one for which they hold a permit as soon as they can make arrangements to do so, but no later then two weeks from the date of this decision.

On or before Thursday, May 25, 2000, the parties may file supplemental arguments regarding the Town's request for a fine in the enforcement case, in light of the Court's findings, conclusions and order in this decision. The enforcement case, Docket No. 106-7-99 Vtec is the only one for which a final judgment has not been entered concluding the case.

2.     Docket No. 114-7-99 Vtec has become moot by operation of this decision, and is concluded by this order, which is an entry of final judgment as to this docket number. V.R.C.P. 54(b). If this decision is appealed, Defendant-Appellants may pursue their request for a stay under the Vermont Rules of Appellate Procedure.

3.     Judgment is entered for the Town in Docket No. 112-7-99 Vtec, the denial of conditional use approval. Defendant-Appellant's use does not qualify for a conditional use permit either in the Rural zoning district under §315, or as an expansion to a pre-existing, non-conforming use under §313(B). This decision and order is an entry of final judgment as to this docket number. V.R.C.P. 54(b).

Done at Barre, Vermont, this 10th day of May, 2000.

_____
                    Merideth Wright
                    Environmental Judge