STATE OF VERMONT

ENVIRONMENTAL COURT

In re: Appeal of Joseph A.          }
Iadanza                             }
                                    }   Docket No. 181-10-99 Vtec
                                    }
                                    }

Decision and Order on Motion to Dismiss and Merits

Appellant Joseph A. Iadanza appealed from the September 7, 1999 decision of the Zoning Board of Adjustment (ZBA) of the Town of Hinesburg regarding a junkyard formerly owned by Victor and Bernard Giroux, and now owned by James and Mark Burnett. Appellant is represented by Richard C. Whittlesey, Esq.; Appellees James and Mark Burnett are represented by Roger E. Kohn, Esq.; and the Town is represented by Ernest M. Allen, Esq.

An evidentiary hearing was held in this matter before Merideth Wright, Environmental Judge. The parties were given the opportunity to submit written requests for findings and memoranda of law. Appellees have also moved to dismiss on the basis of res judicata or collateral estoppel.

Motion to Dismiss

Appellees have moved to dismiss on the basis of res judicata or collateral estoppel, arguing that Appellant's current issues either were or should have been decided in previous actions: either by appealing to the Transportation Board and thence to superior court the action of the Hinesburg Selectboard in granting a certificate under 24 V.S.A. § 2251, or by appealing to the Supreme Court from the Environmental Court's ruling in In re Appeal of Iadanza, Docket No. 230-12-98 Vtec (May 28, 1999).

However, the issues raised in the present appeal could not have been raised in either of those prior actions. In its decision in Docket No. 230-12-98 Vtec, this Court noted that the ZBA's issuance of the certification regarding location called for under 24 V.S.A. § 2251 is not an action taken under Chapter 117, but rather under Chapter 61, subchapter 10. In that decision, the Court noted that Appellant could request the Zoning Administrator to take any enforcement action regarding the extent of Appellees' preexisting, nonconforming use, or whether any abandonment has occurred, and to appeal to the ZBA any adverse decision of the Zoning Administrator. That is what Appellant has done in the present case.

The present appeal involves essentially two questions: whether the scope of Appellees' junkyard exceeds the scope of the preexisting Giroux use (including the extent to which the Giroux use had been abandoned or relinquished over time, if at all) and whether it violates the performance standards of the Zoning Regulations. Neither of these issues could have been litigated by appealing the Environmental Court's May 1999 order in Docket No. 230-12-98 Vtec, nor by appealing the Selectboard's action under 24 V.S.A. § 2251.

Accordingly, the present appeal is not barred either on the basis of <u>res judicata</u> or collateral estoppel, and Appellees' Motion to Dismiss is hereby DENIED.

<u>Merits of Appeal</u>

Upon consideration of the evidence and the written memoranda and proposed findings, the Court finds and concludes as follows.

The property at issue in this case, now owned by Appellees, is an approximately six-acre parcel on the easterly side of Route 116, the main road through the Town of Hinesburg. The property was formerly owned by Ernest Giroux and his wife, who purchased it in 1952. In about 1954, Ernest Giroux and his two brothers Victor and Bernard, started a junkyard on the property. They bought and sold cars, and kept junked cars and car parts at this location. They bought and sold scrap materials, including scrap metals, and stored the scrap at this location. They obtained annual junkyard permits in their name, records of which go back to 1968. Victor and Bernard Giroux also operated an automobile repair and body shop, also doing non-automotive metal fabrication and welding, at a business location in Hinesburg Village, formerly their father's blacksmith shop and automotive garage. That business had been known as Giroux's Body Shop since about 1957.

The first zoning ordinance was adopted in Hinesburg in 1965 or 1966. Under the present zoning ordinance, junkyards are not an allowed use anywhere in the Town.

In the 1960s, a solid metal fence, approximately 16 feet high, was erected around the junkyard to provide screening. From before the adoption of zoning in Hinesburg through its purchase by Appellee-Applicants in 1999, the junkyard was in active use for storage of scrap materials, junked vehicles, and the storage of various pieces of heavy equipment in current use, including forklifts, dumpsters ("roll-offs"), the trailer portion of tractor-trailers, and a cherry-picker. However, the level of activity at the junkyard varied from year to year and season to season, as did the volume of the Giroux business. The level of activity at the junkyard lessened after Ernest Giroux sold his interest in the property to his brothers. Victor and Bernard Giroux continued to use it to store scrap metal and junked vehicles in connection with their auto repair, body shop and metal fabrication business in the Village, with approximately two to three trips to the junkyard occurring per week. From before 1990, and into the 1990s, most of the active use of the junkyard took place in the well-screened north yard, while the south yard was used more for longer-term storage of junked vehicles and trailers.

In 1989, the owner of property to the southeast of the junkyard built a nine-lot residential subdivision, on lots from approximately four to seven acres in size, served by an access road running uphill from Route 116 along the south side of the junkyard property. Appellant purchased his lot in the subdivision in 1990. These lots are at a higher elevation than Route 116 and the junkyard. When he was considering the purchase of his property, Appellant thought[1] that the junkyard was entirely dormant.

As of Appellant's purchase of his property, the more active portion of the junkyard, the 'north' yard, has been entirely screened by the solid fence. To the south of this portion, the 'south' yard

was in less active use and for a time its hedge and fence were in disrepair. Activities in the south yard were visible to an observer, while activities in the north yard were not visible due to the internal solid fencing.

From 1990 to the fall of 1998, Appellant had not noticed or been bothered by the noise from any activities on the junkyard property, except that he noticed piles of discarded materials, including metals, appliances, and a fire truck stored in the south yard, and noticed sheep grazing on the property; except that during three or four days in 1990, a portable car crusher was brought to the junkyard and was operated to crush cars already located on the site; except that he noticed several well-drilling trucks parked in the south yard during 1995-1996; and except that he noticed a pile of stainless steel delivered to the property in 1997 which remained until September 1998.

Appellees James and Mark Burnett are brothers who worked in their father's junk business on Route 2A and are themselves in the junk and scrap metal business. They were familiar with the operation of the junkyard on the property in question when it was operated by the Giroux brothers. They purchased it on May 4, 1999, and worked on it prior to purchase in the fall of 1998. To complete that purchase, they obtained a junkyard permit for it in their name. Mark Burnett and his wife also purchased the house located directly in front of the junkyard property.

Since that time, Appellees have operated their business, Burnett's Scrap Metals, a commercial scrap metal recycling business, from the site. In their business, they leave roll-off containers at their customers' places of business. They maintain at the junkyard a front-end loader, two pickup trucks, roll-off containers, a truck capable of picking up and hauling filled roll-off containers, and a small bucket loader, none of which were acquired from the Giroux brothers. The office and telephone for the business are located in the Mark Burnett residence. They use the roll-off truck to pick up containers filled with scrap metal from area businesses, bring them back to the junkyard, dump and sort the scrap metals, and load the scrap onto tractor-trailer containers for shipment out of the area to scrap metal dealers out of state.

They operate the business on Monday through Saturday from 7 a.m. to approximately 6 or 7 p.m. The sounds emanating from the junkyard due to their operation include the sounds and engine noise from the operation of the heavy equipment on site, the sound of metal items dropped against each other, and the sounds of the back-up beepers from the equipment. Both the number of traffic trips from the site and the sound from the site represent an increase in the level of activity at the junkyard compared to the Giroux use of the site, at least during the 1990s.

Section 5.10.1 of the Zoning Regulations provides that non-conforming uses such as this junkyard " shall not be moved, enlarged, altered, extended, or restored (except as provided below)." It also provides that " [a]ny external evidence of such use shall not be increased by any means whatever without conditional use approval of the Board of Adjustment, and only if the Board finds that the proposed use is no more non-conforming than the previous use and conforms to the standards of Section 5.12 of these regulations." Section 5.12 contains the performance standards, including a prohibition on unreasonable noises.

Section 5.10.2 allows a non-conforming use to continue indefinitely, except that under subsection (1) if it is changed to another non-conforming use it must obtain conditional use approval; under subsection (2) it shall not be re-established if it has been discontinued for a six month period, except due to damage; and under subsection (3) it shall not be restored after more than a year has elapsed after damage. Subsections (1) and (3) do not apply, as the use category has not been changed, and no damage to the junkyard has occurred.

Appellant argues that the Giroux use of the junkyard had been effectively discontinued prior to 1990, and that their use as a " holding area for scrap materials generated by or in conjunction with the " Giroux Body Shop" refabrication business" did not qualify as a ' junkyard' use, so that Appellees' use of the junkyard constitutes an impermissible reestablishment of a discontinued non-conforming use.

The use category " junkyard" is defined in the Zoning Regulations as " any place of outdoor storage or deposit, which is maintained, operated or used in connection with a business for storing, keeping, processing, buying or selling junk, or as a scrap metal processing facility." The term " junk," in turn, is define to include old or scrap metals and nonferrous materials, and discarded motor vehicles or parts thereof. Under these definitions, both the Giroux use and Appellees' use of the property fall within the use category of " junkyard." The use of the property as a " junkyard" under the Hinesburg definition was reduced in intensity, but was never discontinued under the Giroux ownership, so that § 5.10.2(2) does not apply. Appellees' use also qualifies as a junkyard under that definition, so that § 5.10.2(1) does not apply.

There is no question that the intensity of use decreased in the 1990s under the Giroux ownership, and that it has increased substantially under Appellees' ownership. Appellees also operate the business solely from the property rather than also having an off-premises active business location. However, unlike the comparable provisions of Act 250, the Hinesburg Zoning Regulations do not require a permit or trigger review upon some ' substantial change' to the junkyard operation. The junkyard use itself has not been enlarged, altered or extended physically on the property; therefore the first clause of § 5.10.1 does not prohibit Appellees' use. See, Franklin County v. City of St. Albans, 154 Vt. 327, 330-31 (1990).

However, § 5.10.1 also requires that any " external evidence" of a non-complying use " shall not be increased by any means whatever" without conditional use approval of the Board of Adjustment. This section is not limited to external visual evidence. As the external noise generated by the junkyard has increased in duration and type, and may have increased in volume as well, Appellees must seek conditional use approval of that increase from the ZBA. We note that the regulations appear only to require approval of the increase in external evidence, and not of the underlying use.

In determining whether to grant conditional use approval, the Regulations direct the ZBA to assess whether the use conforms to the performance standards in § 5.12, including the noise performance standards. In determining whether to grant conditional use approval, the ZBA is free to determine whether to impose conditions to assure that the performance standards will be met, such as internal site circulation to minimize the use of the back-up beepers, or so-called ' smart' beepers triggered by an obstruction in the path of the equipment, or lining certain metal

containers with sound deadening materials. Also, unlike in the present appeal[2], conditional use approval calls for the ZBA to assess the character of the area. Appellant also asserts that Appellees' junkyard operation violates the performance standards of the Zoning Regulations as to noise. Section 5.12.1 prohibits " unreasonable" noises and also defines hours beyond which noise should not be discernable beyond the property line. Appellees' junkyard does not violate the restrictions on hours of operation.

While Appellant has shown that the noise from the junkyard has increased beyond that occurring when he bought his property, and has shown that he finds the noise disturbing and irritating, we cannot find on the evidence presented that these noises are unreasonable during operating hours in a pre-existing junkyard located directly on Route 116. This finding is without prejudice to any assessment the ZBA may make in its conditional use proceeding, from the evidence presented to it in the future in such proceeding.

Based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellees must obtain conditional use approval of the increase in noise level at the junkyard under § 5.10.1, as an increase in the " external evidence" of a non-complying use. Otherwise, Appellant' s appeal is denied.

Done at Barre, Vermont, this 8th day of January, 2001.


_____
Merideth Wright
Environmental Judge



**Footnotes**

1.    Any cause of action which Appellant may believe he has for misrepresentation in the purchase of his property is beyond the jurisdiction of the Environmental Court; any such cause of action must be brought in Superior Court.

2.    Although Appellant's argument in the present case refers to the area as residential, evidence has not been presented in the present appeal from which the Court can draw a conclusion as to the character of the area, nor do we do so in the present appeal as character of the area is not a criterion in the present appeal.