**STATE OF VERMONT**

**ENVIRONMENTAL COURT**

Appeal of Smith           }
}
}    Docket No. 263-12-02 Vtec
}
}

<u>Decision and Order on Cross-Motions for Partial Summary Judgment or to Dismiss</u>

Appellant William Smith appealed from a decision of the Development Review Board (DRB) of the Town of Richmond affirming the Zoning Administrator= s June 27, 2002 response to Appellant= s and other neighbors= complaints alleging zoning violations at Appellee Chittenden County Fish & Game Club, Inc. Appellant and interested persons May Beth Doyle, Michael Giangreco, Robert Low, Elizabeth Low, William Minard, Susan Minard, Timothy Kenney, Jennifer Kenney, Ellen Ward, Fran Huntoon, and Winifred Doan are represented by Daniel P. O= Rourke, Esq.; Appellee Chittenden County Fish & Game Club, Inc. (Appellee Club) is represented by Paul S. Gillies, Esq.; the Town is represented by Mark L. Sperry, Esq.

Both Appellee Club and Appellant moved for partial summary judgment on Questions 2, 4, 5, and 8 of the Statement of Questions. The Town did not participate in the briefing of the motions. In addition, Appellee Club= s memorandum discussed issues 1, 3, 6 and 7 of the Statement of Questions.

The following facts are undisputed unless otherwise noted. Appellee Club owns a 49-acre parcel of land in the Agricultural/Residential zoning district, on which it operates gun and archery shooting ranges, fishing ponds, hiking trails, tent and trailer campsites and a parking area. Appellee Club= s facility has been in existence since at least 1933, before the enactment of the Town= s first zoning regulations in 1969. Firearms have been used at Appellee Club= s shooting range since before 1969.

As of the adoption of the zoning regulations establishing the Agricultural/Residential zoning district with the current list[1] of allowed uses, Appellee Club= s use of the land became a non-conforming use, whether it falls within the use category of a A private club@ or within the use category of an A outdoor recreation facility[2],@ or both. It became non-conforming as an outdoor recreation facility because that use category is a conditional use in the district and Appellee Club had never undergone conditional use review and did not hold a conditional use permit. If there were a building on the premises, it would have become non-conforming as a A private club@ because that use category is not an allowed use in the district.

In any event, any changes made to the facility after the enactment of the zoning regulations that established the allowed uses in the Agricultural/Residential district should have been applied for as changes to a non-conforming use under ' 4.7 of the Zoning Regulations (which also requires site plan review unless waived by the DRB) or as a conditional use under ' 5.5 of the Zoning Regulations. Both types of approval require compliance with the noise performance standards in ' 4.8 of the Zoning Regulations (see ' 5.5.3(a)). In addition, changes to the parking area required site plan review under ' 6.1.6(a), regardless of whether the other types of approval were required.

Appellee Club made nineteen improvements over the years since 1969, listed in Attachment A to the May 9, 2002 permit application form, without applying for any approvals for those changes, including the replacement of shooting shelters and benches, the addition and improvement of

berms, the installation of a fence and a gate, the improvement of parking surfaces and campsite surfaces, and the replacement of bridges.

On May 9, 2002, Appellee Club applied to the Zoning Administrator for a zoning permit for these past improvements, to remedy the potential violations stemming from their having been installed without a permit. At least some of those past improvements should have been referred to the DRB as changes to a non-conforming use under ' 4.7 of the Zoning Regulations (which also requires site plan review unless waived by the DRB). Instead, on May 21, 2002, the Zoning Administrator granted the zoning permit as within his authority under ' 5.0.2 and 5.7.5. The 15-day appeal period for that decision expired on June 6, 2002.

The Zoning Administrator posted a copy of the permit in the Town Clerk= s Office as required by ' 5.0.4(a)(ii) and 24 V.S.A. ' 4443(b) (and also delivered a copy to the listers as required by those sections). Posting in the Town Clerk= s Office is the only public notice of the issuance of the permit necessary under state law and under the Town= s Zoning Regulations to provide notice to people who might wish to appeal the permit. A failure of such posting or a failure of the permit to notify of the right to appeal may warrant a tolling of the appeal period or allowing an untimely appeal, as a matter of due process. See, e.g., Town of Randolph v. Estate of White 166 Vt. 280 (1997). In the present case, no party appealed the permit to the DRB within 15 days, and it became final under 24 V.S.A. ' 4472(d), even if aspects of it were beyond the authority of the Zoning Administrator to issue. In re Appeal of Ashline, Docket No. 2002-063 (Vt. Supreme Ct., March 28, 2003). Therefore, the Court has no jurisdiction to address Questions 2, 3 and 7 of the Statement of Questions and they are hereby DISMISSED.

Section 5.0.4(b) of the Zoning Regulations also requires the permit to be A displayed in a prominent site on the lot upon which the Land Development is occurring and [that it] shall remain posted until all work is complete.@ The land development allowed by the permit was already complete; Appellee Club did not display the permit on the site. Appellant argues that Appellee Club= s failure to display the May 21, 2002 permit on the Club= s property tolled the appeals period for the permit.

Nothing in ' 5.0.4(b) is a prerequisite to any party= s right to appeal, nor could it logically toll the appeal period. That section only requires the permit to be posted on the affected property during construction. Construction may not be commenced until the 15-day appeals period is over. 24 V.S.A. ' 4443(a)(3) and ' 5.0.5(a), and see language on permit under the space for > effective date:= A No activity shall occur prior to this date.@ Therefore, Appellee Club= s motion for partial summary judgment as to Question 4 is GRANTED and Appellant= s motion for partial summary judgment as to question 4 is DENIED.

On June 18, 2002, Appellant and a group of other neighbors sent a letter to the Zoning Administrator regarding their concerns with what the letter described as a A gradual but substantial increase@ in the use of Appellee Club= s shooting range over the past five or six years. The letter described the addition of shelters and berms to the shooting area, the improvement of the parking lot and addition of a portable toilet, and the possible increase in noise due to the types of firearms now being discharged. The letter requested that the Zoning Administrator immediately investigate and issue a Notice of Violation.

The Zoning Administrator wrote back on June 27, 2003, in the letter on appeal in the present case. The Zoning Administrator declined to issue a formal Notice of Violation for the past improvements made to Appellee Club= s facilities, stating that the May 21, 2003 permit brought Appellee Club A into conformance@ and discussing the non-conforming-use status of Appellee Club. On July 8, 2002, Appellant filed an appeal to the DRB both of the May 21, 2002 zoning permit issuance and of the Zoning Administrator= s June 27, 2002 letter declining to take enforcement action. In the decision on appeal, the DRB upheld the Zoning Administrator= s June

27, 2002 letter and declined to address the May 21, 2002 permit as an untimely-filed appeal of a permit that had become final.

Material facts are in dispute on Question 1 of the Statement of Questions, which essentially asks whether the determinations made in the Zoning Administrator= s letter of June 27, 2003, as upheld by the DRB, are correct; therefore Appellee Club= s request to dismiss Question 1 is DENIED. Material facts are also in dispute as to Questions 5, 6, and 8, regarding whether the use of Appellee Club= s facilities by non-members violates any of the Zoning Regulations, whether the use of Appellee Club= s facility has increased in scope or intensity so as to violate any of the Zoning Regulations, and whether Appellee Club is subject to ' 4.8 of the Zoning Regulations governing noise. Unlike an increase to the use of the building in <u>Franklin County v. City of St. Albans</u>, 154 Vt. 327 (1990), what must be analyzed here is whether any increase to the use or physical characteristics of the site trigger the applicability of ' ' 4.7 or 5.5, and therefore make ' 4.8 applicable as well. Both parties= motions for partial summary judgment as to Questions 5 and 8 must be DENIED.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellee Club= s Motion for Summary Judgment or to Dismiss Questions 2, 3, and 7 of the Statement of Questions is GRANTED as is Appellee Club= s Motion for Summary Judgment as to Question 4 of the Statement of Questions. Appellee Club= s Motion for Summary Judgment or to Dismiss Questions 1, 5, and 8 is DENIED. Appellant= s Motion for Summary Judgment regarding Questions 2, 4, 5, and 8 is also DENIED. Questions 1, 5, 6 and 8 remain for the merits of this appeal. We will hold a telephone conference on May 9, 2003, to discuss the scheduling of the remaining issues for hearing.

Done at Barre, Vermont, this 14th day of April, 2003.


_____
Merideth Wright
Environmental Judge

---

### Footnotes

[1.] The parties have established that the zoning regulations were first adopted in 1969, but have not established when these two use categories were first used in the regulations or what uses were allowed in the district over the years since then.

[2.] Nothing in the particular language of the definition distinguishes among commercial, private or governmental outdoor recreation facilities, and the zoning regulations do not appear to define or separately regulate campgrounds, either for tents or travel trailers. Appellee Club's land use appears to fall within the use category of outdoor recreation, while if it were to operate a clubhouse building, that building and any related facilities would fall within the use category of 'private club.' To stay within the 'private club' definition and to avoid being classified within a commercial restaurant or catering or banquet hall category, private clubs must generally avoid opening the use of their facilities to other than members and invited guests. However, nothing in the materials presented to the Court suggests that Appellee Club operates a building on this property.