STATE OF VERMONT

ENVIRONMENTAL COURT

|  | } |  |
| --- | --- | --- |
| Appeal of State of Vermont | } | Docket No. 30-2-04 Vtec |
| Department of Fish and Wildlife | } |  |
|  | } |  |

Decision and Order on Cross-Motions for Summary Judgment

Appellant State of Vermont Department of Fish and Wildlife, appealed from a decision of the Zoning Board of Adjustment (ZBA) of the Town of South Hero, granting Appellee James Mogan's appeal of the Zoning Administrative Officer's decision that the Department's project at the Allen Point Access Area required no local zoning permits. Appellant is represented by Special Assistant Attorney General Stephen K. Hill, Esq.; Appellee Dr. James Mogan is represented by Peter H. Zamore, Esq.; the Town is represented by Paul S. Gillies, Esq. The parties have submitted the appeal on cross-motions for summary judgment. The following facts are undisputed unless otherwise noted.

The Allen Point Access Area consists of four parcels of land, three of which are owned in fee, and one as an easement, by the State of Vermont. As shown on the 1991 Lavery plan drawing[1], revised October 2003, the shoreline of Lake Champlain curves

away to the west, northerly of where the former railroad causeway from Colchester enters onto the island of South Hero. The right-of-way for the former Rutland Railroad bed, approximately 82½ feet in width throughout its length, extends along the causeway and north from that point past Martin Road. The railroad was abandoned and the tracks were removed in approximately 1960. The State owns the causeway[2] in fee, shown as Parcel 1 on the Lavery plan.

Northerly of the north end of the causeway, the State owns in fee a long, thin triangular 6.4-acre parcel consisting of the former railroad right-of-way together with the land westerly of it to the edge of the lake. This parcel is located entirely in the Shoreland zoning district, which extends 500 feet inland from the mean water line of Lake Champlain. This lakeshore triangle of land is shown as Parcel 2 on the Lavery plan, and provides the actual public lake access at issue in the present appeals.

Northerly of Parcel 2, the State owns an easement[3] over the former railroad right-of-way, approximately 82½ feet in width, passing over property of Appellee Mogan and others, and shown as Parcel 3 on the Lavery plan. Only the southernmost portion of Parcel 3, approximately[4] to the southern boundary of the Mogan parcel, is located within the Shoreland zoning district, the remainder is located in the Rural Residential zoning district.

Northerly of Parcel 3, the State owns in fee a 1.1-acre parcel, consisting of the 82½-foot-wide former railroad right-of-way extending the remaining distance northerly to Martin Road, and shown as Parcel 4 on the Lavery plan. All of Parcel 4 is located in the Rural Residential zoning district.

The State received all of the land at issue in this appeal in fee in 1965. The Town first adopted zoning in 1972. The State transferred its interest in the land lying under the right-of-way on Parcel 3 to one John K. Lambert in 1978, retaining the right-of-way, which the Agreed Statement of Facts described as being "over and across the entire parcel[5] for the purposes of public access from Martin Rd. to the State[-]owned land at Allen Point." Appellee Dr. James Mogan succeeded to a portion of the Lambert property in 1985.

The State operates a recreation path that runs along the former railroad right-of-way from Martin Road to Lake Champlain and continues southerly along the causeway. The former railroad right-of-way on Parcels 4, 3, and 2 forms part of this path and also provides access to the lakeshore triangle of land that is the remainder of Parcel 2. Since 1965, when the State obtained possession of this property, the entire length of the former railroad right-of-way, together with the lakeshore triangle of land that is the remainder of Parcel 2, has been available to the public for recreational use, and has been used on a sporadic basis by anglers, hunters, pedestrians, bicyclists, and other sportspeople. From 1965 to August of 2001, the former railroad right-of-way on Parcels 4, 3, and 2 was used

for public access to the lakeshore triangle of land that is the remainder of Parcel 2, for recreational use, including access by motor vehicles and including the launching of carry-on boats.

By the year 2000, the surface of the traveled way within the former railroad right-of-way on Parcels 4, 3, and 2 had fallen into disrepair due to lack of maintenance, and there was standing water on it during portions of the year. In October 2000, two Selectboard members wrote to the then-Governor requesting that motor vehicle access be discouraged; therefore as of that date motor vehicle access to Parcel 2 was still occurring. In late November, through the then-Commissioner of Fish and Wildlife, and on December 21, 2000, by his own letter, the then-Governor stated his intention that the South Hero Recreation Path be included for funding in the coming budget year, and stated that "[a]s a component of our bike and pedestrian program there will be no motorized access to this path." This policy intention was not made the subject of an executive order.

In August of 2001, the State improved the former railroad bed by resurfacing it with a ten-to-twelve-foot-wide manufactured crushed aggregate surface (known as "surpak"), improving its drainage ditches, and placing granite blocks at the intersection of the former railroad right-of-way with Martin Road, to prevent motor vehicles from using the former railroad right-of-way on Parcels 4, 3, and 2 to reach the lakeshore triangle of land that is the remainder of Parcel 2 or to reach the path along the causeway. No zoning permits

were sought or obtained for this work. In July of 2002, the State put out for bid the regrading of the subgrade, placement of additional surpak, installation of a culvert, and cleaning out the drainage ditches for the "recreation path," in preparation for an event to be held there on August 17, 2002.

In May of 2003, the Department of Fish and Wildlife applied for and obtained conditional use and site plan approval from the ZBA and Planning Commission, respectively, to construct an information kiosk and a 115' x 20' parking lot, with spaces for eight motor vehicles along the easterly side of the existing traveled way on Parcel 4, and with landscaping and screening along the westerly side of the parking area, and a separate bicycle entrance to the trail. Both approvals required the placement of bollards at the "trail/parking lot convergence" on Parcel 4 to prevent motor vehicles (other than emergency vehicles) from using the former railroad right-of-way on Parcels 4, 3, and 2 to reach the lakeshore triangle of land that is the remainder of Parcel 2 or to reach the path along the causeway. No parties appealed these approvals, and they became final.

While the Department did not challenge any conditions of these approvals, nor did it construct the approved project, and the materials supplied by the parties do not include a zoning permit issued for the project on the basis of the conditional use approval and the site plan approval. Conditions in both approvals required the work to be completed by "the end of the 2003 construction season." Nothing in the Zoning Bylaw Regulations

otherwise requires approved work to be commenced or completed within a certain time, other than §304, which requires a new zoning permit to be obtained after two years. If the Department had wanted to do the work in 2004, it could merely have applied for an amendment of the construction dates in the site plan approval and conditional use approval, and then for its zoning permit based on the amended approvals.

Instead, in September of 2003, the State decided to reopen the entire length of the former railroad right-of-way on Parcels 2, 3, and 4 to motor vehicle traffic from Martin Road, to allow motor vehicle access to the lakeshore triangle of land that is the remainder of Parcel 2, preventing motor vehicle access to Parcel 1 only. In October of 2003, the Department of Fish and Wildlife requested a determination from the Administrative Officer of whether any permits were required for the proposed work on former railroad right-of-way on Parcels 2, 3, and 4, to allow resumed motor vehicle access to the lakeshore triangle of land that is the remainder of Parcel 2. The improvements including widening the traveled way along the former railroad bed on Parcels 2, 3, and 4 to a width of twelve feet with surfacing material compatible with motorized vehicle and bicycle uses; installing 'pull-outs' on Parcel 2; associated ditching; removal of the granite blocks at Martin Road; installation of a bollard at the northerly end of the causeway to prevent motor vehicle traffic access onto the causeway; and installation of signs indicating a 15 mph speed limit and information regarding the 'shared use access.'

The Administrative Officer issued the determination letter at issue in the present appeal, stating that parks and trails are permitted uses within the Shoreland zoning district and that "there are no local zoning permits required for your proposed maintenance of an existing park or trail."  The Administrative Officer did not address the status of the roadway improvements on the portions of Parcels 3 and 4 in the Rural Residential zoning district, other than to mention that the 2003 proposal for the "8 car parking area and kiosk" in the Rural Residential district was "now an approved project."  The Department of Fish and Wildlife commenced and completed its proposed project immediately thereafter.  Thus, as of the removal of the granite blocks in late October of 2004, Parcels 2, 3, and 4 were again accessible by motor vehicles.

The Department of Fish and Wildlife argues that there is no change in use as a result of the project, and that the Town would exceed its zoning authority[6] by requiring conditional use approval for the project.

Under what is now codified as 24 V.S.A. §4413(a) (formerly §4409(a)), municipalities may only regulate state and community facilities with respect to:

location, size, height, building bulk, yards, courts, setbacks, density of

buildings, off-street parking, loading facilities, traffic, noise, lighting,

landscaping, and screening requirements, and only to the extent that

regulations do not have the effect of interfering with the intended functional use.

The Vermont Supreme Court most recently examined this issue with respect to state-owned facilities under former §4409(a) in In re Appeal of Department of Buildings and General Services, 2003 VT 92 (2003). While the state or other listed category of applicant must still follow the normal application procedures and is still bound by the finality requirement of the statute, ibid at ¶21(citing City of South Burlington v. Department of Corrections, 171 Vt. 587, 590-91 (2000) (mem.)), the municipality is limited to regulating only the listed attributes of the project. The current statutory section incorporated 'location' as one of the attributes the municipality could regulate, consistent with the Vermont Supreme Court's analysis of former §4409(a), added traffic, noise and lighting, and added the further limitation that the municipal regulations as applied to a particular project must not have the effect of interfering with the intended functional use of the proposed project.

The South Hero Zoning Regulations are relatively rudimentary in that they do not define or provide explicitly for accessory uses such as parking areas or driveways associated with either permitted or conditional uses, and do not provide for the phasing out of non-conforming uses. Under §401, non-conforming uses may continue indefinitely;

under §304, resumption of a use discontinued for more than two years requires a new zoning permit.

The State's use of Parcel 2, located entirely in the Shoreland district, is as a park, with a trail running through it. If we interpret the term "trail" to mean a recreational path for pedestrians and bicycles but not for motorized vehicles, then the State's use of the portion of the former railroad right-of-way on Parcel 2 is also for the accessory use of vehicular access onto Parcel 2 and to the lake for unloading carry-on boats. The State's use of the segment of Parcel 3 that is located in the Shoreland district, is both as a trail and for vehicular access to Parcel 2. These are permitted uses in the Shoreland district and do not require conditional use approval. The maintenance of these permitted uses and the vehicular access to them also does not require zoning approval, to the extent these are located within the Shoreland district. Within the Shoreland district, the resumption of vehicular use of the former railroad right-of-way also did not require conditional use or site plan approval, as it was the resumption of a permitted use, not the resumption of a nonconforming use.

The State's use of the segment of Parcel 3 that is located in the Rural Residential district, is both as a trail and for vehicular access to Parcel 2. The State's use of parcel 4, located entirely in the Rural Residential district, is as a parking area for the trail and park located on parcels 3, 2, and 1, and for vehicular access to Parcel 2. Within the

Rural Residential zoning district, 'recreation' and 'public facilities' are conditional uses. Thus, if the State's use of these parcels did not predate the adoption of zoning in South Hero, it would require conditional use approval, as further limited by 24 V.S.A. §4413(a). The conditional use approval and site plan approval obtained in 2003 pertain to these uses. If the parking use of parcel 4 is still being proposed in the present proposal, the 2003 conditional use and site plan approvals would simply need amendment to move the bollard and to impose any appropriate conditions consistent with the limitations of §4413(a).

However, because the State has provided the recreational and uses and the state facility vehicular access to the Allen Point Access Area since before the adoption of zoning in the Town, the recreational and state facility uses of Parcels 3 and 4 within the Rural Recreational zoning district, including the vehicular access use, qualify as a pre-existing uses, non-conforming only because they lack a conditional use permit. Appeal of Korbet, 2005 VT 7 (January 27, 2005) (mem.)

A pre-existing, non-conforming use may continue indefinitely, §401, and if not abandoned, it may be resumed as a non-conforming use, but only to the extent it was previously used. See Appeal of Smith, 263-12-02 Vtec (Vt. Envtl. Ct., Dec 20, 2004) (slip op. at 3); Franklin County v. City of St. Albans, 154 Vt. 327, 331 (1990) ("If the nonconforming use was not abandoned . . . , then resumption of activity at the jail to pre-

[zoning ordinance] levels, so long as it was within the range of the previous activity and not greater than the maximum activity within that [previous] range, was not an expansion as a matter of law." Thus, even if the motor vehicle use of Parcels 3 and 4 were not abandoned, and could continue indefinitely, the new road surfacing and any parking spaces and related improvements and signage would have to obtain conditional use approval, as limited by 24 V.S.A. §4413(a).

Under §304, once a use has been discontinued on a lot for a period of two years, the lot is deemed to have been abandoned regarding that use, and may not be further developed without a new zoning permit. In the present case, the vehicular use of the former railroad right-of way on Parcels 3 and 4 was discontinued for over two years, from August 2001 to late October 2003. It must be treated as having been abandoned, so that resumption of and any expansion of the vehicular use of the former railroad right-of-way in the Rural Residential zoning district requires a zoning permit, which requires conditional use approval as discussed above.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that both motions for summary judgment are granted in part and denied in part, as discussed above. The vehicular access uses on the portion of Parcels 3 and 4 located in the Rural Residential zoning district require conditional use approval, but only on the limited

attributes in 24 V.S.A. §4413(a), and then only so as not to interfere with the intended functional use.

It appears to the Court that this decision concludes the above-captioned appeal, and that any issues regarding the merits of any conditional use application for parcel 3 or 4 on the limited factors allowed to be considered under 24 V.S.A. §4413(a), will not be before the Court until or unless they have been considered in a decision of the appropriate municipal panel. Any issues regarding the scope of the private property rights relating to the easement (such as whether parking along the easement is precluded by its terms) are also not before the Court, as they must be addressed in superior court. Accordingly, we will hold a telephone conference on February 7, 2005, to discuss whether anything remains for trial or whether a judgment order should be entered in this matter. Please submit any proposed judgment order prior to the conference.

Done at Barre, Vermont, this 31st day of January, 2005.

_____
Merideth Wright

Environmental Judge

---

[1] This plan does not purport to be a survey. It has at least three internal inconsistencies, in that the scale stated on the plan is 1" = 200', the graphic scale shown on the plan measures as 1" = 133' (1½" = 200'), and the scale as extrapolated from the 3/8" measurement on the plan itself of the known 82.5-foot-width of the former railroad right-of-way extrapolates to a scale of 1" = 220 feet. These inconsistencies make it difficult to determine exactly where the inland boundary of the Shoreland zoning district falls. We do not need to resolve that boundary for the purposes of the present decision.

[2] The causeway is not at issue in the present case.

[3] The length of the segments of the former railroad right-of-way attributable to each parcel is not material to the issues in this case. We note that the 2000-foot length for Parcel 3 stated in the Agreed Statement of Facts is not consistent with the graphic scale on the plan (which yields a length of approximately 900 feet for that segment). See footnote 1, above. Without additional information we have avoided stating the measurements of the segments.

[4] See footnote 1, above.

[5] The deed language has not been provided to the court.

[6] Question 12 of the Statement of Questions adequately raises the issue of the degree to which the Town's authority is limited by former 24 V.S.A. §4409(a)(2).