2003 VT 49

# In re Appeal of Casella Waste Management, Inc. and E.C. Crosby & Sons, Inc. (Sally Mole, et al., Appellants)

[830 A.2d 60]

No. 02-324

Present: Amestoy, C.J., Dooley, Johnson and Skoglund, JJ., and Allen, C.J. (Ret.), Specially Assigned

Opinion Filed May 29, 2003

*David W. Gartenstein* of *Downs Rachlin Martin PLLC,* Brattleboro, for Appellants.

*Robert F. O'Neill, John R. Ponsetto* and *Megan J. Shafritz* of *Gravel and Shea,* Burlington, for Appellee Casella Waste Management, Inc.

*Mary C. Ashcroft,* Rutland, for Appellee Town of Sunderland.

¶ 1. **Amestoy, C.J.** Appellants Sally Mole, Dale Guldbrandsen, Tim and Kerry Walker, and Ruth Fuller-White ("landowners" collectively)

appeal from a decision of the environmental court approving the construction of an access road connecting a solid waste transfer station owned by appellee Casella Waste Management, Inc. ("Casella") to Route 7A in Manchester. Landowners assert that the access road constitutes an unauthorized extension of a pre-existing nonconforming use to an adjacent parcel because: (1) Manchester's zoning ordinance does not allow the extension of a nonconforming use onto land not previously occupied by the nonconforming use; and (2) the purpose of Vermont's zoning statute is to eliminate nonconforming uses. Thus, landowners argue that the trial court erred by construing Manchester's zoning ordinance to permit such a use. We affirm.

¶ 2. Casella owns and operates a solid waste transfer station located on a parcel of land straddling the Manchester/Sunderland town line. The transfer station functions as a pre-existing nonconforming use in the farming and rural residential zoning district in the town of Manchester. Waste hauling trucks travel to Route 7 or Route 7A via small, rural roads such as River Road and Richville Road in Manchester, or Sunderland Hill Road and Hill Farm Road in Sunderland.

¶ 3. In 1998, Casella applied to the State of Vermont District Environmental Commission # 8 for a permit to upgrade its transfer station and solid waste hauling operation. The Commission issued the permit on the condition that Casella either construct a new access road to the facility or implement a traffic mitigation plan in order to alleviate the adverse impacts of the commercial trucks on the rural road system. In January 1999, Casella submitted a plan to the Town of Manchester Zoning Board of Adjustment (ZBA) to construct an access road through an adjacent parcel of land providing direct access to Route 7A from the transfer station. The adjacent parcel was previously owned by E.C. Crosby and Sons, Inc., but Casella purchased it during the course of the permit application process.

¶ 4. Landowners, who live near the transfer station, opposed Casella's proposed access road. After conducting hearings to review the project, the Manchester ZBA approved the plan to construct the access road and issued Casella a permit in June 1999. The ZBA found that the proposed access road would "improve public health, safety, and welfare by removing large truck traffic from the back roads of Manchester and Sunderland."

¶ 5. In the summer of 1999, both parties filed notices of appeal to the environmental court. Casella appealed two conditions imposed by the ZBA's decision granting permission to build the access road.

Landowners cross-appealed, arguing that the ZBA's decision was invalid. Prior to trial, landowners moved for summary judgment, asserting that Vermont law prohibits Casella from extending its nonconforming use onto land not previously subject to such use unless Casella obtained a variance, and that in any event Casella would not be eligible to obtain a variance. The motion for summary judgment was denied. Evidentiary hearings were held over a three-day period in the fall of 2001. Following post-trial briefing in which landowners renewed their request that Casella's application be denied and judgment be entered in their favor as a matter of law, the environmental court issued a final decision approving Casella's application on July 5, 2002. This appeal followed.

■ ¶ 6. Zoning ordinances are interpreted according to the general rules of statutory construction. *In re Weeks*, 167 Vt. 551, 554, 712 A.2d 907, 909 (1998). Thus, we first look to the plain meaning of the ordinance. *In re Stowe Club Highlands*, 164 Vt. 272, 279, 668 A.2d 1271, 1276 (1995). If the plain meaning "resolves the conflict without doing violence to the legislative scheme, there is no need to go further, always bearing in mind that the paramount function of the court is to give effect to the legislative intent." *Lubinsky v. Fair Haven Zoning Bd.*, 148 Vt. 47, 49, 527 A.2d 227, 228 (1986). We review the environmental court's construction of a zoning ordinance to determine whether the interpretation is clearly erroneous, arbitrary or capricious. *Weeks*, 167 Vt. at 554, 712 A.2d at 909.

¶ 7. Landowners' principal contention in this case is that the environmental court erred in construing Manchester's zoning ordinance so as to authorize an extension of a nonconforming use to adjacent land. At issue is the environmental court's interpretation of § 8.1.1.3 of Manchester's ordinance, which provides:

No nonconforming use shall be extended or expanded, except with the approval of the [ZBA], provided that the [ZBA] shall have found that such extension or expansion will have no adverse effect upon the public health, safety, convenience, and upon property values in the vicinity; and, in judging the application, the [ZBA] should consider the criteria that would apply to the use if it were in a zone in which the use is permitted.

¶ 8. Landowners assert that because "the central purpose of the zoning statute [is] to eliminate nonconforming uses," *In re Richards*, 174 Vt. 416, 424, 819 A.2d 676, 683 (2002), a zoning ordinance must be

strictly construed against the extension of nonconforming uses onto land not previously occupied by the nonconforming use. Landowners contend that the environmental court's decision approving Casella's permit application must be reversed because neither Manchester's zoning ordinance nor Vermont's zoning laws provide the authority to grant a permit under the facts of this case. We disagree.

¶ 9. Landowners correctly observe that there is a strong public interest in regulating the extension and undue perpetuation of nonconforming uses. *In re Gregoire*, 170 Vt. 556, 559, 742 A.2d 1232, 1236 (1999) (mem.). One of the primary goals of zoning is to gradually eliminate nonconforming uses because "they are inconsistent with the purpose of developing use-consistent areas in communities." *Id.* at 558, 742 A.2d at 1235. As such, we strictly construe zoning ordinances allowing nonconforming uses. *Id.* at 559, 742 A.2d at 1236.

¶ 10. Vermont's relevant zoning statute, 24 V.S.A. § 4408(b), authorizes municipalities to regulate nonconforming uses in the following four circumstances: "(1) Changes of nonconforming uses to another nonconforming use; (2) Extension or enlargement of nonconforming uses; (3) Resumptions of nonconforming uses . . . ; and (4) Movement or enlargement of a structure containing a nonconforming use." Vermont law does not mandate a specific method for regulating nonconforming uses; thus, "we turn to the municipal zoning regulation to determine how the municipality regulates nonconforming uses." *In re Miserocchi*, 170 Vt. 320, 324, 749 A.2d 607, 610 (2000).

¶ 11. With respect to the "[e]xtension or enlargement of nonconforming uses," 24 V.S.A. § 4408(b)(2), municipal approaches have varied considerably, ranging from a complete prohibition on extending nonconforming uses to adjacent parcels to permitting extensions with zoning board approval. For example, the zoning ordinance at issue in *DeWitt v. Brattleboro Zoning Board of Adjustment*, 128 Vt. 313, 262 A.2d 472 (1970), contained a prohibition on the extension of nonconforming uses which stated that " '[a] nonconforming use shall not be enlarged or extended.' " *Id.* at 318, 262 A.2d at 475 (quoting Town of Brattleboro, Vt. Ordinance art. XIII, § 1301(a) (1964)). In contrast, the zoning ordinance at issue in *Franklin County v. City of St. Albans*, 154 Vt. 327, 576 A.2d 135 (1990), permitted the extension of any legal nonconforming use upon zoning board approval, " 'providing it does not adversely affect the surrounding areas and providing it meets the same criteria as for

special conditional use.'" *Id.* at 328, 576 A.2d at 136 (quoting Town of St. Albans, Vt. Ordinance § 604 (1977)).

¶ 12. Landowners argue strenuously that the presumption against extension of nonconforming uses is so great as a matter of law that it was error for the environmental court to construe the Manchester ordinance as authority for extending a nonconforming use to adjacent land, absent specific language granting such authority. Indeed, landowners contend that even if the ordinance contained such language, the approval of Casella's application would be illegal because 24 V.S.A. § 4408 should be read to prohibit "ambulatory" nonconforming uses. Notwithstanding landowners' contrary interpretation, we are not confronted with a decision of the environmental court that failed to construe the term "nonconforming use" to give effect to the whole ordinance. Cf. *Gregoire*, 170 Vt. at 558-59, 742 A.2d at 1235 (finding that environmental court's "narrow interpretation of 'use' failed to consider whether the Town's regulation of the *use of land* brought the [property] within the ambit of restrictions relating to 'noncomplying use' "). Here, the environmental court specifically concluded that the Manchester zoning ordinance provides for the expansion of nonconforming uses on a separate parcel of land not formerly occupied by the nonconforming use.

¶ 13. It is not necessary to take issue with landowners' assertion that "[a] rule that nonconforming uses become ambulatory if a developer buys up adjacent land . . . would be bad policy" in order to address the issue this case presents. This is not a situation where the zoning ordinance in question fails to provide any criteria or guidelines under which the ZBA may evaluate whether to approve an extension of a nonconforming use to adjacent land. Cf. *Miserocchi*, 170 Vt. at 325, 749 A.2d at 611 (explaining that since the zoning regulation in dispute failed to provide any criteria under which the board of adjustment could evaluate whether to approve a change in nonconforming use, " 'the applicant . . . is left uncertain as to what factors are to be considered' ") (quoting *Town of Westford v. Kilburn*, 131 Vt. 120, 124, 300 A.2d 523, 526 (1973)). Section 8.1.1.3 of Manchester's ordinance provides specific criteria to guide the ZBA in considering permit applications. For example, before approving an extension or expansion, the ZBA must "consider the criteria that would apply to the use if it were in a zone in which the use is permitted" and find that the "extension or expansion will have no adverse effect upon the public health, safety, convenience, and upon property values in the vicinity." Town of Manchester, Vt. Ordinance § 8.1.1.3 (1998).

■ ¶ 14. Landowners cite *DeWitt* as the "seminal case" supporting their assertion that "nonconforming uses are not ambulatory." In *DeWitt*, we found that the proposed extension of the gas station onto adjacent land was absolutely prohibited by Brattleboro's zoning ordinance, which read, without exception, that "[a] non-conforming use shall not be enlarged or extended." 128 Vt. at 318, 323, 262 A.2d at 475, 478. Similarly, another case relied upon by landowners, *Rotter v. Coconino County*, 818 P.2d 704 (Ariz. 1991), involved a county zoning ordinance which provided that a nonconforming use may not expand onto a "'site which it did not occupy at the time it became a nonconforming use.'" *Id.* at 706 (quoting Coconino County, Ariz. Ordinance § 17.3(B) (1987)). The zoning ordinances at issue in both *DeWitt* and *Rotter*, however, are significantly different from Manchester's ordinance, which expressly allows extensions and expansions of nonconforming uses that are approved by the ZBA pursuant to identified criteria.

¶ 15. Nor can landowners look to *DeWitt* for support of their contention that the law can never authorize the extension of a nonconforming use to an after-acquired adjacent parcel. Landowners' assertion that clearly established principles of Vermont law and public policy disfavor nonconforming uses does not compel the legal conclusion that extension of nonconforming uses cannot be authorized. Indeed, the *DeWitt* opinion's reliance on the prohibitory language of the Brattleboro ordinance and the Court's observations that extension of a nonconforming use is "not automatic[]," is impermissible "in most instances," and may be justified by "urgent necessity," 128 Vt. at 320, 262 A.2d at 476-77, suggests that such extension is permissible when within the appropriate statutory context and predicated upon a sufficient factual foundation.

¶ 16. Despite landowners' attempt to characterize the environmental court's interpretation of the Manchester zoning ordinance as an unlawful and unwise acknowledgment of a right to an "ambulatory" nonconforming use, Casella does not claim to have a *right* to the extension of the nonconforming use. Casella claims only that, under the Manchester ordinance, the ZBA *may* approve such an extension or expansion, pursuant to the requisite criteria. Cases which involve attempts by the landowners to extend nonconforming uses in the face of prohibitive ordinances, whether by claim of right, as in *Rotter*, or by request for a variance, as in *DeWitt*, are inapposite where we are confronted with a permissive ordinance. Cf. *In re Maurice Memorials*, 142 Vt. 532, 536, 458 A.2d 1093, 1095 (1983) ("[I]n the absence of

further zoning provisions permitting enlargement...of a nonconforming use, such [extension of a nonconforming use] prohibited by ordinance may only be done by way of variance.").

¶ 17. The primary purpose of zoning is to bring about the orderly physical development of a community. *Vt. Brick & Block, Inc. v. Village of Essex Junction*, 135 Vt. 481, 483, 380 A.2d 67, 69 (1977). The Legislature has, however, provided municipalities with the authority under 24 V.S.A. § 4408(b) to fashion a flexible approach to address this goal. As a result, the town of Manchester created a zoning ordinance which allowed for the expansion or extension of a nonconforming use with zoning board approval in unique circumstances, such as the one presented here. Commentators have acknowledged the benefits of allowing the extension of nonconforming uses under such zoning regulations:

> The chief advantages of regulations which require administrative approval of extension are the opportunity they afford to make a case-by-case prognosis of the probable effect of extension, and the possibility of imposing conditions which will protect nearby landowners from injury caused by the expansion of a nonconforming use.... [T]hese regulations are capable of providing flexible control of nonconforming uses which permits the use to adjust to growth and change, but protects the area from severe injury.

1 R. Anderson, American Law of Zoning 3d § 6.53, at 607-08 (1986).

¶ 18. This case presents a situation where, in addition to a finding that the project would not adversely affect public health, safety, and convenience, both the ZBA and the environmental court found that Casella's proposed access road would actually improve these areas. Indeed, Casella initiated the plan in response to the District Environmental Commission's suggestion that Casella amend the application to include a right of way to Route 7A for heavy trucks in order to provide for the safety of pedestrians and others who use the same roads, as well as to prevent or mitigate traffic impacts. The environmental court also found that the use of the access road would decrease the damage to the rural roads and the risk of harm to pedestrians, horseback riders, bicyclists and other users of the roads, by reducing the heavy truck traffic. The court found that the road is designed to minimize adverse effects on the surrounding environment and to be unobtrusive to the viewshed of the valley. Taking all of the evidence into consideration, the court concluded that the proposed

access road would not adversely affect the capacity of existing or planned community facilities, traffic on roads and highways in the vicinity, or the character of the area.

¶ 19. We cannot say that under the facts of this case the environmental court's interpretation of Manchester's ordinance was clearly erroneous, arbitrary or capricious, and accordingly, the decision of the environmental court is affirmed.

*Affirmed.*