STATE OF VERMONT

ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
| | } | |
| Appeal of Bennington | } | Docket No. 57-4-04 Vtec |
| Motor Car, Inc., et al | } | |
| | } | |

Decision and Order on Cross-Motions for Summary Judgment

Appellant-Applicants Bennington Motor Car, Inc., Michael Hernandez, and Robert

Bearor (collectively, Bennington Motor Car) appeal from two Bennington Development Review

Board (DRB) decisions, both dated March 2, 2004. One DRB decision upheld the Zoning

Administrator's decision to deny Bennington Motor Car's zoning permit application for the

expansion of a new and used car dealership and service facility onto a contiguous, undeveloped

lot. Another DRB decision granted site plan approval, with conditions, for the same project.

Bennington Motor Car is represented by A. Jay Kenlan, Esq.; the Town is represented by Robert

E. Woolmington, Esq. The Town and Bennington Motor Car both have filed motions for

summary judgment.

The sole issue now before the Court on summary judgment is whether the car sales and

service facility proposal presents a "new" nonconforming use, prohibited under section 8.11(5)

of the Bennington Zoning Bylaw, or an expansion of a "pre-existing" nonconforming use,

permitted under section 8.11(3) of the Zoning Bylaw.

## Background

The following facts are undisputed unless otherwise noted.

1. Bennington Motor Car is an existing new and used car sales and service facility located on Route 7 in Bennington.

2. The Bennington Motor Car property is located in Bennington's Rural Residential zoning district, and falls within the Route 7 Corridor Overlay. Car sales and service facilities are not an allowed use within the Rural Residential zoning district.

3. Bennington Motor Car and previous, similar businesses have operated at the present Bennington Motor Car site continuously since before the enactment of the Zoning Bylaw which disallows the relevant uses in the Rural Residential zoning district.

4. On its present site, Bennington Motor Car's sales and service facility is a pre-existing, nonconforming use.

5. Adjacent to the Bennington Motor Car site, in the same zoning district, is a 2.4 acre, undeveloped parcel owned by Appellant-Applicant Robert Bearor.

6. Bennington Motor Car has agreed to purchase the Bearor lot with the intention of expanding its current sales and service facility onto that lot.

7. Bennington Motor Car filed a zoning permit application, along with a site plan, on October 28, 2003, proposing to expand Bennington Motor Car's parking area onto the Bearor lot and to construct an additional interior driveway, with associated site work, landscaping, and lighting on both lots.

8. Under the regulations, a "new" nonconforming use is prohibited under section 8.11(5) of the Zoning Bylaw, but a "pre-existing" nonconforming use may be "expand[ed]" under section 8.11(3), subject to review and DRB approval.

9. The Administrative Officer denied the application, indicating that the proposed project would create a "new" nonconforming use, prohibited by section 8.11(5). Bennington Motor Car appealed that decision to the DRB.

10. On March 2, 2004, the DRB denied Bennington Motor Car's appeal by written decision in which it specifically found that the proposed development would constitute a "new" nonconforming use, prohibited under section 8.11(5). The DRB did not make findings as to whether the proposal should be approved as an expansion of a pre-existing, nonconforming use pursuant to section 8.11(3). However, the DRB did approve the site plan, with conditions.

11. Bennington

class=Section2>
Motor Car appealed to this Court the DRB's zoning permit denial as well as certain site plan conditions.

## Discussion

The sole issue is whether the proposed project is a "new" nonconforming use prohibited by section 8.11(5), or is an expansion of a "pre-existing," nonconforming use allowed with DRB approval under section 8.11(3). Bennington Motor Car makes a plain language argument that its proposal falls under section 8.11(3) because it currently is a "pre-existing nonconforming use," and proposes, literally, to expand. The Town argues that the proposal creates a "new" nonconforming use because it introduces a pre-existing, nonconforming use to a lot that previously conformed to the regulations.

Zoning regulations are interpreted according to the general rules of statutory construction. In re Weeks, 167 Vt. 551, 554 (1998). Thus, we first look to the plain meaning of the ordinance. In re Stowe Club Highlands, 164 Vt. 272, 279 (1995). If the plain meaning "resolves the conflict without doing violence to the legislative scheme, there is no need to go further." Lubinsky v. Fair Haven Zoning Bd., 148 Vt. 47, 49 (1986).

It is undisputed that Bennington Motor Car's sales and service facility is a pre-existing, nonconforming use. Vermont law does not mandate any one particular approach to the regulation of nonconforming uses. See 24 V.S.A §4408(b)(2) (authorizing municipalities to regulate the extension or expansion of nonconforming uses). Instead, a municipality's zoning regulations determine the specific method for the regulation of nonconforming uses. In re Appeal of Casella Waste Managment, 2003 VT 49, ¶ 10-11, 175 Vt. 335. Indeed, approaches to the regulation of the extension or expansion of nonconforming uses have varied, ranging from outright prohibition to permission with approval. See generally, e.g., Casella, 2003 VT 49 (prohibiting the extension or expansion of nonconforming uses, except with ZBA approval); Franklin County v. City of St. Albans, 154 Vt. 327 (1990) (permitting the extension of nonconforming uses with zoning board approval); De Witt v. Brattleboro Zoning Board of Adjustment, 128 Vt. 313 (1970) (prohibiting the extension or enlargement of nonconforming uses).

The Casella precedent appears to be particularly applicable to the expansion proposed here. In fact, the expansion ultimately allowed in Casella took place, in part, on an undeveloped adjoining parcel of land. We find this similarity of facts persuasive.

Under the Town's Zoning Regulations here, "[n]o new nonconforming use shall be *created* under the variance provisions or any other provision of this Bylaw." §8.11(5) (emphasis added). Section 8.11(3) (emphasis added), on the other hand, states:

> No nonconforming use shall be *extended or expanded*, except with the approval of the [DRB], provided that said [DRB] shall have found that such extension or expansion will have no adverse effect upon the public health, safety, convenience, and upon property values in the vicinity, except in cases where in the opinion of the [DRB], such enforcement would work a hardship on the owner of an established nonconforming use.

Thus, section 8.11(3) expressly allows for the extension or expansion of pre-existing, nonconforming uses that are approved by the DRB, pursuant to identified criteria, as in Casella. 2003 VT 49, ¶ 1, 175 Vt. 335. Furthermore, neither section makes any distinction relating to whether a pre-existing, nonconforming use is proposed to expand only on its own lot, as opposed to expanding onto an adjoining or to-be-merged parcel. That distinction, relied upon by the Town, does not exist in the regulations. We perceive no basis for reading this distinction into the regulations, much as the Supreme Court refused to do in Casella. 2003 VT 49, ¶14, 175 Vt. 335.

The Town argues that our interpretation of the Zoning Bylaw renders an absurd result, essentially because the Town review standards in section 8.11(3) are less stringent than those applicable to commercial uses in the Town's Commercial zoning district. That is, it would be easier to obtain a zoning permit for the extension or expansion of a nonconforming commercial use than for a permitted commercial use. Even if that were the result, it would not be an absurd one. The Town is free to regulate nonconforming uses as it pleases. However, that result is not necessitated by our interpretation.

Section 8.11(3) explicitly provides that approval is contingent upon the DRB "hav[ing] found that such extension or expansion will have no adverse effect upon the public health, safety, convenience, and upon property values in the vicinity." For our analysis, it is not necessarily relevant whether a similar or different outcome is reached under section 8.11(3) or section 6.0 (i.e., the performance standards for permitted commercial uses).

Finally, the Town argues that a generally applicable portion of section 8.11 prohibits the proposed expansion. That portion states that "any [nonconforming] building . . . which was designed, arranged, intended for or devoted to a non-conforming use, may be reconstructed and structurally altered, and the non-conforming use therein changed." §8.11. The Town contends that the word "therein" in this language restricts the current proposal. However, the proposed project does not involve the reconstruction or structural alteration of any nonconforming building. In any event, section 8.11(3) controls because it is more specific than §8.11. See Stevenson v. Capital Fire Mut. Aid Sys., Inc., 163 Vt. 623, 625 (1995) (mem.) (construing conflicting statutes that deal with the same subject matter to give effect to the more specific provision).

Therefore, we conclude that Bennington Motor Car's proposed project should be analyzed under section 8.11(3) as an expansion of a "pre-existing" nonconforming use, rather than under section 8.11(5) as a "new" non-conforming use. Because there are material facts in dispute as to the merits of Bennington Motor Car's zoning permit application, we will hold a telephone conference with the parties to discuss what issues remain in this appeal.

Accordingly, based on the foregoing, it is hereby ordered and adjudged that Bennington Motor Car's motion for summary judgment is **GRANTED**, and the Town's motion for summary judgment is **DENIED**.

Done at Berlin, Vermont, this __<sup>th</sup> day of April, 2005

_____
Thomas S. Durkin, Environmental Judge