STATE OF VERMONT

ENVIRONMENTAL COURT

|  | }  |
| --- | --- |
| In re: Rouleau Property appeals | } Docket Nos. 231-12-04 Vtec; 28-2-05 Vtec; |
|  | } 29-2-05 Vtec; 192-9-05 Vtec; and 193-9-05 Vtec |
|  | } |

Decision and Order

The above-captioned appeals were taken from several decisions of the Zoning Board of Adjustment (ZBA) of the Town of Cabot, regarding landowner-applicant Marlynn Rouleau's property in the Shoreland zoning district. Applicant Marlynn Rouleau, through her son Randy Rouleau, is represented by Lauren S. Kolitch, Esq.; neighbors Dale Wells, Judith Wells, Charles Aimi, Alice Aimi, and Joanne Davis are represented by Edward R. Zuccaro, Esq. and Christopher D. Roy, Esq.; and the Town of Cabot is represented by Paul S. Gillies, Esq. As the applicant is the appellant in some of the appeals, and the appellee in others, we will use the terms "Applicant" and "Neighbors" in this decision.

In Docket No. 231-12-04 Vtec, Applicant Rouleau appealed the ZBA's reversal of the Zoning Administrator's grant of a zoning permit to move an existing non-conforming camp[1] building (the "existing house") to a new location within the shoreline setback for Joe's Pond, and to place it on a slab foundation. In Docket No. 28-2-05 Vtec, Applicant appealed the denial of a variance for the same proposal to move the existing house.

---

[1] The term "camp" or "camp building" is commonly used in Vermont to refer to a seasonal dwelling. However, as the Cabot Zoning Regulations do not define or use the term "camp" or "seasonal dwelling" and do not distinguish between a seasonal single-family dwelling and a year-round single-family dwelling, we will use the term "house" to refer to both the existing and the proposed single-family dwellings. The Septic Regulations do distinguish between seasonal dwellings and [year-round] single-family dwellings.

1

In Docket No. 29-2-05 Vtec, Applicant appealed the denial of a zoning permit to construct a new single-family dwelling (the "new house") on the same lot with the existing house. This proposal is for a new two-story, 28' x 80' (2240 square foot) house and garage, while leaving the existing house in place, so that there would be two principal buildings on the lot.

In Docket No. 192-9-05 Vtec, the DRB approved of the conversion of the existing house to an 'accessory'[2] building, conditioning that conversion on the removal of all the toilets and sinks and their disconnection from the existing sewage disposal system, as well as the removal of the kitchen range and the exterior decks. Neighbors appealed the approval of the change of use of the existing non-conforming house to an 'accessory building,' while Applicant Rouleau appealed the condition that exterior decks be removed from the existing house as a condition of that change of use. In Docket No. 193-9-05 Vtec, Neighbors appealed the grant of a zoning permit to construct a new 77½' x 59' (4573 square foot) three-bedroom house, with a two-car garage, on the same lot as the existing house, but after the conversion of the existing house to an 'accessory building.' Docket No. 192-9-05 Vtec must be considered in light of whether Docket No. 193-9-05 Vtec is approved, because an 'accessory' building under the ordinance and the state statute is only defined

---

[2] Section 1.8 of the Zoning Regulations defines an "accessory" building as a building located on the same lot as the principal building and "customarily incidental and subordinate to the principal . . . building." In the January 2006 decision on partial summary judgment in these matters, the Court ruled that the Zoning Regulations do not prohibit an applicant from applying to convert an existing principal building on a lot to allow it to become accessory to a newly-approved principal building. However, that decision left for trial the disputed facts of whether, in the present appeals, the proposed new house itself qualifies for approval, as well as the disputed facts of the extent to which the existing house (after its conversion) would or would not be "customarily incidental or subordinate to" that proposed new house.

2

and can only be analyzed in terms of its relationship to a principal building on the lot.

After a decision on motions for summary judgment addressed certain issues, an evidentiary hearing was held on the remaining issues in this matter before Merideth Wright, Environmental Judge. The parties were given the opportunity to submit written memoranda and requests for findings. Upon consideration of the evidence and of the written memoranda and requests for findings filed by the parties, the Court finds and concludes as follows. To the extent any proposed findings of fact and conclusions of law are incorporated in this decision, they are granted; otherwise, they are denied.

The Town of Cabot has adopted Zoning Regulations, under 24 V.S.A. Chapter 117, and has adopted a Sewage Ordinance under 24 V.S.A. Chapter 102, pertaining to On-Site Sewage Systems. The Sewage Ordinance distinguishes between seasonal dwellings (not occupied more than six months per year) and single-family dwellings used as primary residences. The Zoning Regulations do not distinguish between single-family dwellings occupied seasonally and those occupied year-round.

The Rouleau lot is 0.89 of an acre in area, with a lot frontage on West Shore Road of 132.78 feet, on the west shore of Joe's Pond. In the Shoreland zoning district, §4.4 of the Zoning Regulations requires, for residential uses, a minimum lot size of one acre and a minimum lot frontage of 150 feet. As discussed in the January 2006 decision in these matters, the lot is therefore nonconforming as to lot size and frontage, but, as an existing small lot, under §3.2 of the Zoning Regulations it may be developed for the purposes allowed in the district "even though not conforming to minimum lot size requirements." And see 24 V.S.A. §4412(2).

Section 4.4 of the Zoning Regulations requires a 75-foot setback from the shoreline, a 25-foot setback from the side lot lines, and a 50-foot setback from the front lot line. The existing house is located entirely within the shoreline setback area. A substantial area

3

exists on the lot within which a building could be located that would be in compliance with all of the setback requirements for the lot. This potential building envelope is shown on the diagram attached at the end of this decision. The potential building envelope is approximately 50 to 80 feet in width and approximately 160 feet in length. Limiting factors within this envelope are the required isolation distance from the leach fields (depending on whether the proposed building is designed on a slab foundation, or whether the septic system is redesigned or moved), the potential for adjustment of the location of the access drive, and the size of the proposed house. Nevertheless, there is adequate room for a house the size of the existing house to be located on a slab foundation within the building envelope.

Access from West Shore Road is via a horseshoe-shaped gravel drive that extends from the road in an easterly direction onto the lot, and then curves towards the south to run on Applicant's property along the Wells' westerly lot line, and onto the adjacent properties to the south, curving back to rejoin West Shore Road. The Neighbors' rights to use the segment of the gravel drive on the Rouleau property are the subject of litigation in Washington Superior Court (Wells v. Rouleau, Docket No. 616-11-04 Wncv) in which the Neighbors have recently prevailed. While that decision or any appeal of it may affect the availability of the portion of the building envelope underlying the gravel drive, an ample remaining area exists easterly of the loop driveway within which a building and/or a septic system could be located in compliance with all the required setbacks, and an ample remaining area also exists westerly of the loop driveway within which a building and/or a septic system could be located in compliance with all the required setbacks.

The existing house, built in the 1920s, was originally one and a half stories, and has had a two-story addition added to the side of one end, making the building L-shaped. It is oriented with one end towards Joe's Pond, with what appears to be an enclosed porch and a deck facing the water. It has a kitchen, three bedrooms, and one-and-a-half

4

bathrooms. Its footprint is approximately sixty feet in length and approximately twenty feet in width except for being thirty feet in width across the short leg of the L, measured by scale from Exhibit 29. It is located approximately two to five feet from the shoreline of Joe's Pond. The existing house does not have central heating.

The existing house is served by a septic system with two disposal fields (leach fields). One disposal field is located entirely within the shoreline setback,[3] to the north of the existing house. Another disposal field is located in compliance with the setback requirements for the property. There is no evidence of failure of either system, based on the current level of seasonal use of the existing house.

As discussed in the January 2006 summary judgment decision in these matters, the existing building therefore is a non-complying building, nonconforming as to the shoreline setback. Any changes to the building must therefore be considered under §2.10 of the Zoning Regulations dealing with non-conforming uses and non-complying buildings.

There is no question that the existing house building is deteriorating due to its proximity to the water. It is on a foundation of wooden piers, and, due to the action of water and ice, the house is leaning towards the pond and the foundation is increasingly damaged by standing water under the building. There is no question that, under §2.10, Applicant would be entitled to repair or rebuild the existing house in its present footprint, on a concrete or otherwise stabilized foundation, so long as its degree of non-compliance is not increased.

Proposals to move the existing house (Docket Nos. 231-12-04 Vtec and 28-2-05 Vtec)

The proposal in these two appeals is to install a new concrete slab foundation in a

---

[3] Nothing in the Zoning Regulations appears to prohibit the location of a sewage disposal field within a required setback, although §3.10 prohibits their location within the floodplain unless approved by the state Agency of Natural Resources.

different location but still within the lakeshore setback, and to place the existing house on the new foundation, so that it would be located parallel to and approximately thirty feet from the south side boundary with the Wells lot. The building would still be located entirely within the 75-foot shoreline setback, with its easterly side located from six to eleven feet from the actual shoreline of the pond, and it would continue to be served by its existing septic system.

The relocation of the existing house falls within the definition of the term 'development' in §1.8 of the Zoning Regulations, and therefore requires a permit.

Applicant first argues that she is entitled to relocate the existing nonconforming house to a different nonconforming location within the shoreline setback, without a variance, simply because the lot is an existing small lot that is entitled to be developed. However, the existing small lot provision of §2.1 and 24 V.S.A. §4412(2) only exempts an existing small lot from the ordinance's requirements as to minimum lot size or area requirements, that is, as to the attributes of the lot size or area, including frontage. It does not exempt a proposed building from meeting the setback or other dimensional requirements of the ordinance; if it cannot meet those requirements, it must qualify for a variance from those setback requirements. See In re: Mutchler, Canning and Wilkins, 2006 VT 43, ¶5, n.3; Appeal of Bailey, 2005 VT 38, ¶ 8;

Applicant also argues that §2.10(4) authorizes the relocation of the camp. That section allows a non-complying building to be enlarged, but only to the extent that the degree of noncompliance is not increased. In the present case, approval of the relocation proposal will cause an area[4] of the shoreline setback that formerly was clear to be occupied by the house. The area to be newly occupied by the house would be closer to the Wells'

---

[4] Estimated from the site plan to be the size of approximately three-quarters of the footprint of the existing house.

6

property than the existing house, even though it would not cause a new side setback violation in addition to the shoreline setback noncompliance. Therefore, the relocation of the building cannot be authorized under §2.10. And see, In re Appeal of Tucker, Docket No. 123-7-98 Vtec (Vt. Envtl. Ct., Aug. 2, 1999); aff'd Docket No. 1999-399 (Vt., Mar. 10, 2000) (unreported mem.) (three-justice panel) (permit to build one-story building extending into side setbacks does not authorize expansion to two stories within the setbacks, even though the expansion would not have violated the height limitations or extended laterally any farther into the setbacks). Accordingly, without a variance, the application in Docket No. 231-12-04 Vtec to move the existing non-conforming house building to a different location within the shoreline setback must be DENIED.

Therefore we turn to whether the relocation proposal qualifies for a variance. To qualify for a variance, Applicant must meet all five requirements of 24 V.S.A. §4469(a), as made applicable to this proposal by §2.6 of the Zoning Regulations:

(1) There are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property, and that unnecessary hardship is due to such conditions, and not the circumstances or conditions generally created by the provisions of the bylaw in the neighborhood or district in which the property is located.

(2) Because of these physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the bylaw, and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.

(3) The unnecessary hardship has not been created by the appellant.

(4) The variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, substantially or permanently impair the appropriate use or development of adjacent property, reduce access to renewable energy resources, or be detrimental to the public welfare.

7

(5) The variance, if authorized, will represent the minimum variance that will afford relief and will represent the least deviation possible from the bylaw and from the plan.

If the application fails any one of the criteria, it will fail to qualify for a variance.

Most importantly, in the present case Applicant has failed to show that it is impossible to develop the property in compliance with the required setbacks. To the contrary, there is an ample building envelope available within which to move or rebuild the existing building, or to build a new building of that size, in compliance with the setbacks of the Zoning Regulations, whether the relocated building were to use the existing leach fields or whether a new sewage disposal system were to be installed. It may even be possible to add an accessory building to the property. That is, it remains possible that the existing house could be reconstructed on a new foundation within the footprint and volume of the existing nonconforming building, and that a new accessory building could be proposed in compliance with the required setbacks elsewhere on the lot. It remains possible that an accessory building could be proposed within the footprint of the existing building, and that a new principal building could be proposed to be located in compliance with the required setbacks elsewhere on the lot. Due to these alternative possibilities, the proposed relocation of the building fails to qualify for a variance.

Moreover, Applicant has failed to show that the requested variance would be the least deviation possible from the zoning regulations. Applicant has also failed to show unique physical conditions[5] of this property creating an unnecessary hardship. Accordingly, it fails to qualify for a variance and we need not rule on whether the proposed relocation would substantially impair the appropriate use or development of the adjacent property, as compared with the present location of the existing non-complying building.

_____

[5] The location of "Wastewater Disposal Area #2" was placed by Applicant's predecessor; therefore it cannot qualify as an unnecessary hardship.

8

In re: Mutchler, Canning and Wilkins, 2006 VT 43; Sorg v. North Hero Zoning Bd. of Adjustment, 135 Vt. 423, 426 (1977).

Proposal to add a second house on the undersized lot (Docket No. 29-2-05 Vtec)

Applicant proposes to construct a new, two-story, 80' x 28' single-family house and garage within the allowed building envelope on the lot, while leaving the existing house in its existing location. Applicant proposes that both houses would only be used seasonally, and that the existing house would continue as the principal structure on the lot.

Section 1.8 of the Zoning Regulations defines the term "lot" as land "occupied or to be occupied by a building and its accessory buildings, together with the required open spaces, . . . ." (Emphasis added.) The use of the singular for "building" and the modifier "accessory" for any other buildings, read together, means that only one principal building is allowed on a lot, although it may have multiple accessory buildings. No proposal has been made to add an accessory building such as a garage or storage building, with or without an accessory apartment,[6] within the building envelope. The lot is already undersized for the existing principal building, without adding another principal building. Any use not permitted by the regulations is deemed to be prohibited. Zoning Regulations §1.3.

Applicant also argues that two single-family houses may be allowed on the undersized lot as a planned residential development. Although a planned residential development is a permitted use category in the Shoreland District, for a proposal to obtain approval as a planned residential development it must meet all the requirements §4.5 and must also obtain site plan approval from the Planning Commission. A planned residential development allows the clustering of multiple dwelling units on a lot, to "discourage strip

---

[6] And see 24 V.S.A. §4412(1)(E).

9

development and to preserve optimum open space." Aside from the fact that Applicant has neither applied for this proposal as a planned residential development nor applied for site plan approval from the Planning Commission, the property does not meet the requirement of §4.5(2) that the number of dwelling units clustered in a PRD may not exceed the number that would have been allowed normally under the district regulations, that is, one for every acre of property area.

Analyzing the proposal as one to place a new principal building on an already undersized lot, it is apparent that the lot's nonconformity would increase, at least as to the one-acre lot size required for a principal residential building. Zoning ordinances that allow nonconformities are strictly construed, In re Casella Waste Management, 2003 VT 49, ¶¶2–4; 175 Vt. 335, 338. In the present case, the Zoning Regulations do not provide for any increase in nonconformity. The existing small lot provisions of the Zoning Regulations and the state statute allow an undersized lot to be developed for a reasonable economic use; this undersized lot has been developed for a reasonable economic use, that is, a single-family house. Those provisions "do not guarantee indefinite expansion of uses on undersized lots." In re: Appeal of Persis Corp., Docket No. 100-6-98 Vtec, slip op. at 4 (Vt. Envtl. Ct., July 28, 1999), aff'd, Docket No. 1999-398 (Vt., Mar. 13, 2000) (unreported mem.) (three-justice panel). Accordingly, the application to construct a new single-family dwelling on the same lot with the existing house is DENIED.

In addition, the septic system for the new house would have to receive approval under the Town's (and any state) on-site sewage regulations, Zoning Regulations §3.15(7), and would not qualify for any exemption as an existing system because it would enlarge the demand on the system (three bedrooms in the new house plus the three bedrooms in the existing house).

Although the Sewage Ordinance for the Town of Cabot is appended to the Zoning Regulations, it states in its Section 1 that it was adopted under 24 V.S.A. Chapter 102,

relating to on-site sewage systems. Unlike zoning matters under 24 V.S.A. Chapter 117 (or matters arising under 24 V.S.A. Chapter 61, subchapter 12), that statute is not within the subject matter jurisdiction of the Environmental Court. 4 V.S.A. §1001(b); see also 10 V.S.A. §8503. Any waivers available to an applicant under §3.4 of the Sewage Ordinance relating to minor modifications would have to be applied for to the Sewage Officer under that section; any appeal of such a ruling would be to the Selectboard and then to the Superior Court, under §4.8 of the Sewage Ordinance. Applicant has not presented evidence that the septic system for the proposed new house, if it were to be added to the demand from the existing house, has received any required approval or waiver or would qualify for any required approval or waiver under the Sewage Ordinance.

Proposals to change the use of the existing house to an 'accessory building,' to be accessory to a new house to be built within the building envelope (Docket Nos. 192-9-05 Vtec and 193-9-05 Vtec)

In Docket No. 192-9-05 Vtec, Applicant proposes to convert the existing house to an accessory building by removing all the toilets and sinks and disconnecting them from the existing septic system, and removing the kitchen range, and by using the building for residential living purposes during the day and for storage, but not for sleeping quarters at night. Applicant does not propose to remove the decks unless it is required as a condition of approval.

The term "accessory" building is defined in §1.8 of the Zoning Regulations as a building located on the same lot as the principal building and "customarily incidental and subordinate to the principal . . . building." Nothing in the Zoning Regulations prohibits the concept of converting an existing building (that was formerly the principal building on a lot) to allow it to become accessory to a newly-approved principal building.

In the area of Cabot adjacent to Joe's Pond, it is customary to have an accessory

11

building for storage of household items, vehicles and boats, that is, including sheds, boathouses, and garages. Some are located nearer the road than is the principal house, others are located closer to the water than is the principal house. Some of these buildings are relatively large with respect to the principal residential building on the lot, although the larger ones tend to be located closer to the road (farther from the water) than is the principal residential building on the lot, and to include garage space for vehicles and/or boat storage.

However, in the present proposal a garage use is not proposed for the converted existing building, rather a garage is proposed as accessory to or part of the new proposed principal residence. Nor does Applicant propose to convert the existing building for use as a boathouse. Rather, the proposed use of the converted existing building is in part as accessory daytime living space associated with enjoyment of the pond, including the use of the decks, and in part as the use of the building for general household storage.

Given that proposed use, even with the removal of its decks, the existing house in its present location and without a garage or other similar non-residential function, is too large to be considered to be subordinate to any principal building that could be built on the existing undersized lot. Accordingly, the present application to convert the existing building to accessory use is DENIED, WITHOUT PREJUDICE.

In Docket No. 193-9-05, Applicant proposes to construct a 77½' x 59' three-bedroom house with a two-car garage, within the allowed building envelope for the lot. Applicant proposes to connect it to the septic system formerly used by the existing house, which would be disconnected from that system and converted to accessory use (Docket No. 192-9-05 Vtec). This proposal is a larger footprint house than that proposed in Docket No. 29-2-05 Vtec. Applicant proposes that the use of the new house would be seasonal; this fact is only pertinent to issues under the Sewage Ordinance.

12

Applicant appears to hold a disposal system construction permit "for [the] new camp only." See Exhibit 10. That decision is not before this court for review. With this permit under the Sewage Ordinance, and with the same sewage generation as the existing building (that is, the same number of bedrooms and the same seasonal use), the proposal would satisfy the requirement of §7.15 of the Zoning Regulations.

The fact that the new house, as proposed, would occupy some portion of the land lying under the circular driveway, does not implicate the Zoning Regulations, as the property has frontage on West Shore Road. The question of whether the Neighbors' rights to the use circular driveway would prevent the construction of this proposal is a question of their respective property rights and is also not before this Court.

The proposal to construct the new house meets all of the dimensional requirements of the ordinance, and holds a disposal system construction permit under the Sewage Ordinance, but it can only be approved if it is not a second principal building on the lot. (See discussion at Docket No. 29-2-05 Vtec, above.) Until or unless the existing house is proposed to be removed or reduced in size and function to qualify as a truly accessory structure, therefore, the proposal to construct the new house cannot be approved at this time. It is DENIED, but specifically WITHOUT PREJUDICE to Appellant's reapplication for this design or any other house within the allowed building envelope, if the existing camp is proposed to be removed or is approved to be converted to a smaller accessory building within its existing footprint.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that:

In Docket No. 231-12-04 Vtec, Applicant Rouleau's application to move the existing non-conforming house building to place it on a slab foundation elsewhere within the shoreline setback is DENIED.

In Docket No. 28-2-05 Vtec, Applicant Rouleau's application for a variance for the

same proposal to move the existing house is DENIED; it fails to meet the requirements for a variance, as an adequate building envelope exists in compliance with all the setback requirements within which the existing house could be moved.

In Docket No. 29-2-05 Vtec, Applicant Rouleau's application to construct a new single-family dwelling on the same lot with the existing house is DENIED, as the zoning regulations do not allow two principal buildings on a lot unless the lot has adequate area to meet the minimum lot size requirements for each of the buildings, which this lot does not have.

In Docket No. 192-9-05 Vtec, Applicant Rouleau's application to convert the existing house to an accessory building is DENIED (without prejudice to future proposals for its conversion to a smaller accessory building), as even with the removal of its decks it would be too large to be considered to be subordinate to any new principal building that could be built on the existing undersized lot.

Because the proposed conversion in Docket No. 192-9-05 Vtec does not constitute an accessory building, in Docket No. 193-9-05 Vtec, Applicant Rouleau's application to construct a new single-family three-bedroom house, with a two-car garage, is DENIED WITHOUT PREJUDICE at the present time, only because the proposal constitutes a second principal building on the lot. Applicant may reapply for this design or any other house within the allowed building envelope, if the existing camp is removed or converted to a smaller accessory building within its existing footprint.

Done at Berlin, Vermont, this 17th day of November, 2006.

_____
Merideth Wright
Environmental Judge

14