**STATE OF VERMONT**
**ENVIRONMENTAL COURT**

|  |  |  |
|---|---|---|
| In re: Appeal of Carroll | } } } } | Docket No. 3-1-05 Vtec |

## Decisions on Motions for Summary Judgment

This appeal arises out of a decision of the Jericho Development Review Board approving Appellee-Applicants CRC Sand & Gravel and Mary Alice Rivers' five-lot subdivision plan. Appellee-Applicants CRC Sand & Gravel and Rivers were represented by Vincent A. Paradis, Esq.[1] Appellant Patricia Carroll is represented by Norman C. Smith, Esq. Cross-Appellant Dennis R. Pearson represents himself, as do Cross-Appellants Albert W. and Myrna M. Lindholm. The Town of Jericho ("Town") is represented by Gregg H. Wilson, Esq.

Appellant Carroll and Cross-Appellants Lindholm have moved for summary judgment. Cross-Appellant Pearson has filed a reply memorandum in support of Appellant Carroll's motion. Appellee-Applicants, through their past legal counsel, have filed memoranda in opposition to the pending summary judgment requests.

For purposes of our review of the pending motions, we understand that the following facts are undisputed unless otherwise noted.

## Background

1. Appellee-Applicant Mary Alice Rivers owns a single parcel of land consisting of approximately 41.95 acres with road frontage of about 660 feet along Bolger Hill Road in Jericho, Vermont.

2. Lots 1, 2, and 3 of Appellee-Applicants' proposed subdivision are located in the Jericho rural residential district and have frontage on Bolger Hill Road.

3. Lots 4 and 5 of Appellee-Applicants' proposed subdivision are located in the Jericho conservation zone district, but have no frontage on a public road.

4. Lot 4 of Appellee-Applicants' proposed subdivision contains 11.66 acres.

5. Lot 5 of Appellee-Applicants' proposed subdivision contains 14.65 acres.

---

[1] The Court granted Attorney Paradis's motion to withdraw as Appellee-Applicant's legal counsel on August 21, 2007. Appellee-Applicants are under a Court directive to advise this Court of their future representation by October 3, 2007.

6. Lots 4 and 5 of Appellee-Applicants' proposed subdivision would be accessed by a 60-foot wide right-of-way as depicted on the approved subdivision plan.

7. On December 3, 2004, the Jericho Development Review Board (DRB) approved Appellee-Applicants' five-lot subdivision plan for the property located at 30 Bolger Road. It is from this determination that the pending appeal and cross-appeal were taken

### Discussion

Appellant Carroll's motion for summary judgment seeks a determination that Appellee-Applicants have not met the requirements of the Jericho Zoning Regulations, specifically § 302.6. Appellee-Applicants do not dispute the Appellant's factual assertions. Instead, Appellee-Applicants argue that § 302.6 does not apply to the proposed subdivision and argue that § 302.5.1 of the Jericho Zoning Regulations authorizes their proposed subdivision. As discussed below, we conclude that Appellee-Applicants proposed subdivision must satisfy both sections of the Town Zoning Regulations ("Regulations").

Cross-Appellants Lindholm argue in their motion for summary judgment that there is no genuine issue of material fact that the proposed subdivision will cause serious harm to their home site on Bolger Hill Road in contravention of State ground water protection laws. Cross-Appellants Lindholm also argue that the proposed subdivision will create a trespass on their land.

Appellee-Applicants respond, arguing that because Cross-Appellants Lindholm have made no reference to any engineering studies or reports that corroborate their assertions, genuine issues of material fact exist and summary judgment is inappropriate. Appellee-Applicants also argue that summary judgment is inappropriate because Cross-Appellants Lindholm have not made specific reference to the statutes, rules, or regulations with which the proposed subdivision does not comply. For the reasons more fully discussed below, we agree with Appellee-Applicants here and conclude that summary judgment in the Lindholms' favor is inappropriate at this time.

We take these motions in turn. We must first note the often-cited starting premise that summary judgment is appropriate only if the pleadings and other evidence "show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." V.R.C.P. 56(c)(3); In re Hildebrand, 2007 VT 5, ¶9 (2007). The party opposing summary judgment is "entitled to the benefit of all reasonable doubts and inferences…." Montgomery v.

Devoid, 2006 VT 127, ¶28.  With those principles in mind, we will consider the pending motions for summary judgment.

**Applicable Jericho Zoning Regulations**

Appellee-Applicants do not dispute the material facts as recited by Appellant Carroll. Appellant's rendition of the facts explained the nature and layout of the proposed subdivision with appropriate reference to the Appellee-Applicants' subdivision plat.  However, the parties' disagreement lies over which section of the Regulations applies to the proposed Lots 4 & 5.

Appellants[2] argue that the proposed subdivision violates Jericho's Zoning Regulations because Lots 4 and 5 are of insufficient acreage, given that they are located within Jericho's Conservation Zone and have no frontage on a public road.  According to § 302.8, lots within the Conservation Zone must have a minimum lot area of 10 acres and a minimum road frontage of 400 feet.  Regulations § 302.8.  Appellants contend that because Lots 4 and 5 have no road frontage, they are subject to § 302.6.  That section reads as follows:

**302.6  Back-Land Lots**

The purpose of this section is to reasonably facilitate the development of land that does not have the required frontage on a public road.  In order to minimize the creation of superfluous public roadways, deep back-land lots having less than the required road frontage, but more than the required acreage, may be developed. Such back-land lots may be created in any district provided each lot created has a minimum land area equal to twice the minimum required lot size for the district, and has one of the following means of access to a public road:

> 1)  a minimum of 50 feet of frontage on a public road, or
>
> 2)  access to a public road by means of a 30-foot right-of-way that serves as the required access to no more than four lots without frontage.

When it is possible and reasonable, the number of curb cuts shall be kept to a minimum.  The desired result will be fewer intersections on roads.

Id.

Thus, according to Appellants, Lot 4 and 5 must have at least double the minimum required acreage for a Conservation Zone, or twenty acres, since they do not have frontage on a public road.   The proposed subdivision would therefore not be allowable, according to Appellants, because Lot 4 would only contain 11.66 acres and Lot 5 would only contain 14.65 acres.

---

[2]  We use the term "Appellants" here and elsewhere to apply both to Appellant Carroll and Cross-Appellant Pearson.

In response, Appellee-Applicants argue that § 302.6 does not apply, and that the proposed subdivision is allowable because it meets the requirements of a different section of the Regulations, § 302.5.1.  That section provides as follows:

**302.5  Frontage and Setback Requirements**

302.5.1    Required Frontage on or Access to Public Roads

As required by 24 V.S.A. § 4406(2), no land development shall be permitted on lots which do not have frontage on a public road, or, with the approval of the Planning Commission, access to such a road by a permanent easement or right-of-way at least thirty feet in width.  Except as provided in section 302.6, one thirty foot wide private easement or right-of-way may serve as a required access under this section for no more than two lots without frontage.  A curb cut permit shall be obtained from the Zoning Administrator in accordance with the Curb Cut Standards adopted by the Select Board prior to construction of any private road, drive, or right-of-way which will intersect a town road.

Id. at § 302.5.1.[3]

Appellee-Applicants stress that § 302.6 states its purpose is to "facilitate the development of land that does not have the required frontage on a public road."  It appears that Appellee-Applicants interpret this provision to mean that it only pertains to the subdivision of parcels that are already landlocked (i.e.: have no road frontage).  But the very language of this section contradicts this assertion.  We also note that while § 302.6 speaks of land parcels that have less than the required road frontage, § 302.5.1, speaks of land parcels with no road frontage.

When charged with interpreting statutory language,[4] we are instructed to read the section as a whole so as to give the entire section meaning.  In re Stowe Club Highlands, 164 Vt. 272, 279-80 (citation omitted).  Section 302.6 governs the allowable size of "back-land lots;" it requires the back-land lots to have a minimum of twice the acreage allowed in the zoning district.  Id.  Further, § 302.6 speaks to when back-land lots are "created."  If this provision spoke to when back-land lots are "subdivided," its language would support Appellee-Applicants' assertion that § 302.6 does not apply to the subject parcel.  We conclude that § 302.6 applies

[3]   24 V.S.A. § 4406 (2004) has been repealed and recodified, with changes, at 24 V.S.A. § 4412(3)(2005).  The former statutory provision applies here, since the application which is the subject of this appeal was first filed in 2003.

Section 4406(2) did not permit land development on lots which did not either have frontage on a public road or public waters or access to a public road or waters by a permanent easement or right-of-way at least twenty feet in width on permission of the planning commission.

[4]   When interpreting municipal regulations, the rules governing statutory construction apply.  In re: Kim Wong Notices of Violation, Docket Nos. 169-7-06 Vtec and 293-12-06 Vtec (Vt. Envtl. Ct., Mar. 12, 2007) (citing In re Casella Waste Management, 2003 VT 49, ¶6, 175 Vt. 335, 337 (2003)).

both to the development of pre-existing back-land lots and to when such lots are first created, through the act of subdivision.

We next turn our attention to § 302.5.1, which prohibits the development of land that does not have frontage on a public road, unless it has access to a public road by means of a permanent easement or a right-of-way of at least thirty feet in width.[5] Section 302.5.1 nowhere speaks specifically to the subdivision of land, other than its reference to "development"[6] of such land-locked parcels. We find this portion of § 302.5.1 to not be applicable to the specific legal issue raised by Appellants: requires minimum lot size.

The title to § 302.5 announces that it pertains to "Frontage and Setback Requirements;" the title to sub-§ 302.5.1 announces its purpose as "Required Frontage on or Access to Public Roads." Nowhere does the provisions of § 302.5 speak to the minimum size for lots created through subdivision that have no road frontage, which is the very legal issue raised by Appellants' summary judgment motion. By its reference to "[e]xcept as provided in section 302.6," § 302.5.1 appears to also limit the number of land-locked parcels that may be served by a 30-foot wide right-of-way, thereby highlighting this section's focus on frontage and setback requirements, not the creation of lots. Section 302.6 specifically speaks to the "creation" of parcels that do not have the required road frontage, known under the Jericho Zoning Regulations as "back-land lots." While we conclude that both §§ 302.5 and 302.6 apply to the creation or development of land-locked parcels, § 302.6 sets the minimum size requirements for land-locked parcels that are created by a proposed subdivision.

Since Appellee-Applicants propose the creation, through subdivision, of land-locked parcels that are less than double the minimum lot size under the applicable zoning district Regulations, we can see no set of facts, even when viewed in a light most favorable to them, under which Appellee-Applicants' proposed subdivision would conform with the Jericho Zoning Regulations. Summary judgment must therefore be granted to Appellants on this issue.

---

[5]  Such easement or right of way must be approved by the planning commission for the landlocked parcel to be developed under § 302.5.1.

[6]  The term "land development" is defined by the Jericho Zoning Regulations to include, among other things, "[t]he division of a lot into two or more lots…." Id. at App. 1.

**Cross-Appellants Lindholm Motion for Summary Judgment**

Cross-Appellants Albert W. and Myrna M. Lindholm have also moved for summary judgment and a dismissal of the pending subdivision application. They argue that the proposed subdivided lots "create severe and adverse repercussions on [their] property located directly across Bolger Hill from [the proposed d]evelopment." Specifically, they argue that the Appellee-Applicants' subdivision plan does not address issues related to potentially excessive run-off and drainage resulting from clearing trees and the potential contamination of neighboring wells by winter salt, lawn chemicals, and other chemical applications. The Lindholms contend that the Appellee-Applicants "will be unable to create any disputed question of fact requiring an actual trial on these issues."

The Appellee-Applicants have responded by asserting that the project, as designed, takes into account not only existing groundwater and storm run-off, but also post-construction surface run-off. They also assert that the project, as designed, addresses contamination and water supply issues. In short, they argue that the project, as designed, will not damage adjacent properties and that there are, for purposes of the Lindholms' pending motion, genuine issues as to material facts remaining for trial. In support of their position, the Appellee-Applicants have offered the affidavit of Douglas F. Hewitt, P.E., the engineer who designed the lot layout of the subdivision.

As discussed, summary judgment is appropriate when the pleadings and affidavits show there is no genuine dispute as to material fact, Hildebrand, 2007 VT 5, ¶9. We determine whether there are disputed issues of material fact by viewing all facts asserted by the non-moving party in a most favorable light and by discounting all contravening facts asserted by the moving party; the party opposing summary judgment is entitled to all reasonable doubts and inferences. Devoid, 2006 VT 127, ¶28.

Here, the Cross-Appellants have made no reference to any engineering study and have made no reference to any specific statute or regulation, but have made general allegations that their property will be harmed. A party asserting or opposing summary judgment may not rest on mere allegations to rebut credible documentary evidence or affidavits. Gore v. Green Mountain Lakes, Inc., 140 Vt. 262, 266 (1981). Appellee-Applicants have provided an affidavit from their engineer who states that the proposed subdivision will not harm any adjacent properties. Summary judgment is not appropriate here. There are genuine issues of material fact remaining as to whether the proposed subdivision will cause harm to adjacent properties. While our

conclusion regarding Appellants' summary judgment request results in the pending application being denied as a matter of law, we feel it necessary here to note that summary judgment in the Lindholms' favor is not appropriate on the record now before us.

### Conclusion

For all these reasons, we conclude that Appellant Carroll, joined by Cross-Appellant Pearson, are entitled to summary judgment as a matter of law. The consequence of this determination is that the approval of Appellee-Applicants' proposed five-lot subdivision by the Jericho Development Review Board, dated December 2, 2004, is hereby **VACATED** and Appellee-Applicants' subdivision application is hereby **DENIED**. A Judgment Order accompanies this Decision. This concludes the current proceedings before this Court in this appeal.

Done at Berlin, Vermont this 20th day of September, 2007.

_____
Thomas S. Durkin, Environmental Judge